UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN D. JUSTICE,

                                    Plaintiff,

                                                        9:13-CV-0252
v.                                                      (NAM/TWD)

KRISTEN M. WOODLOCK, as Acting Commissioner
of the New York State Office of Mental Health;
DR. BRIAN BELFI; and BRIAN FISCHER, as
Commissioner of the New York State Department of
Corrections and Community Supervision,

                                    Defendants,


_____

APPEARANCES:                              OF COUNSEL:

JOHN D. JUSTICE
87-B-0385
Plaintiff *pro se*
Great Meadow Correctional Facility
Box 51
Comstock, New York 128

HON. ERIC T. SCHNEIDERMAN          KEVIN M. HAYDEN, ESQ.
Attorney General for the State of New York    Syracuse Regional Office
Attorney for Defendant                         615 Erie Boulevard West, Suite 102
The Capitol                                    Syracuse, NY 13204-2465
Albany, New York 12223

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.    INTRODUCTION

        *Pro se* Plaintiff John D. Justice, an inmate presently confined in Great Meadow

Correctional Facility ("Great Meadow"), filed an Amended Complaint (Dkt. No. 12) in this civil

rights action, brought under 42 U.S.C. § 1983, following the dismissal without prejudice of his original Complaint on initial review pursuant to 28 U.S.C. §1915(e)(2)(B) and 28 U.S.C. §1915A.[1]  (Dkt. No. 9.)  Named as Defendants in the Amended Complaint are Kristen M. Woodlock ("Woodlock"), in her official capacity as Acting Commissioner of the New York State Office of Mental Health ("OMH"), for declaratory relief; Dr. Brian Belfi ("Belfi"), Director of Legal Affairs at Kirby Psychiatric Center, for declaratory relief in his official capacity and for monetary damages in his personal capacity; and Brian Fischer (Fischer"), former Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"). (Dkt. No. 12 at ¶ 5.)  Judge Mordue dismissed the claims against Defendant Fischer without prejudice on initial review and required Defendants Woodlock and Belfi to respond to the Amended Complaint.[2]  (Dkt. No. 13.)

Defendants Woodlock and Belfi have now moved to dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 21.)  Plaintiff has opposed the motion.  (Dkt. Nos. 25-28.)  For the reasons explained below, the Court recommends that Defendants' motion be granted in part, and that

---

[1]  Plaintiff named Michael Hogan ("Hogan"), former Commissioner of the New York State Office of Mental Health, and Defendant Brian Belfi as Defendants in his original Complaint.  (Dkt. No. 1 at 1-2.)  On initial review, the Hon. Norman A. Mordue, Senior District Judge, dismissed the Complaint without leave to amend as against Hogan, sued only in his official capacity, on the grounds that Hogan had retired and was not a proper defendant for prospective injunctive relied.  (Dkt. No. 9 at 5-6, 14.)  Plaintiff was given thirty days within which to file an Amended Complaint, with Plaintiff's original Complaint to be dismissed without prejudice upon his failure to do so.  *Id.* at 14-15.

[2]  Judge Mordue concluded on initial review of the Amended Complaint that Fischer was not a proper defendant with regard to Plaintiff's claim for prospective declaratory relief because Fischer had retired from state service prior to the time Plaintiff first brought claims against him, and dismissed the action against Fischer without prejudice.  (Dkt. No. 13 at 7.)

Plaintiff's § 1983 claim against Belfi for money damages for the violation of his due process and equal protection rights under the Fourteenth Amendment to the Constitution be stayed pending resolution of the recommitment proceeding under Criminal Procedure Law § 330.20(14) presently pending in New York State Supreme Court.[3]

## II.    ALLEGATIONS IN THE AMENDED COMPLAINT

On September 16, 1985, Plaintiff, then seventeen years old, stabbed his mother, father, and brother to death and killed an unrelated individual, Wayne Haun ("Haun"), with an automobile.  (Dkt. No. 12 at ¶ 8.)  A jury found Plaintiff not guilty by reason of mental disease or defect in the killing of his father and brother and on the related weapons charges (Counts 1, 3, 5, and 7).  *Id*.  Plaintiff was found guilty in the deaths of his mother and Haun and on the related weapons charges (Counts 2, 4, 6, and 8).  *Id*.  Plaintiff was sentenced to a term of twenty-five years to life for the killings of his mother and Haun, and one year on the weapons charges.  *Id*. at ¶ 9.  At the sentencing, the Court stated that: "The Court's sentences under Counts 2, 4, 6 and 8 are to be executed first and compliance with those sentences shall be deemed to satisfy the statutorily required commitments under Counts 1, 3, 5, and 7."  *Id*.

The convictions on Counts 2, 4, 6, and 8 were reversed on appeal and the disposition on Counts 1, 3, 5, and 7 was left undisturbed.  *Id*. at ¶ 9.  At a retrial on Counts 2, 4, 6, and 8 in 1992, Plaintiff was found guilty of manslaughter in the deaths of his mother and Haun and on the

---

[3] In his Amended Complaint, Plaintiff has alleged that the recommitment proceeding is pending in New York State Supreme Court, Erie County.  (Dkt. No. 12 at ¶ 29.)  The recommitment application filed by Plaintiff also indicates that the recommitment application was brought in Supreme Court, Erie County.  (Dkt. No. 5 at 5-10.)  However, according to August 26, 2014, correspondence to the Court from counsel for Defendants, the recommitment proceeding is pending in Supreme Court, Washington County, under Index No. 22146.  (Dkt. No. 34.)

related weapons charges. *Id.* at ¶ 10. On November 25, 1992, after the jury verdict on retrial and before re-sentencing, Plaintiff's counsel wrote to then Assistant Director of the Bureau of Forensic services for OMH, Richard Miraglia ("Miraglia"), informing him that he was in the process of preparing Plaintiff's pre-sentence memorandum and inquiring about Plaintiff's "actual status . . . specifically as to whether he is now free of Mental Hygiene, ets. (sic)."

Miraglia responded by letter of December 16, 1992, writing that "the Office of Mental Health has neither initiated nor is it aware of any pending applications pursuant to Criminal Procedure Law (CPL) 330.20."[4] *Id.* at § 13. Miraglia also wrote that: "I direct your attention to the Sentence imposed by Judge McCarthy that directed Mr. Justice to be committed to OMH custody pursuant to the provisions of Article 16 of the NYS Correction law to satisfy the statutorily required commitments under Counts 1, 3, 5 and 7. Counts 1, 3, 5 and 7 refer to the charges for which Mr. Justice was found not responsible due to mental disease or defect . . . . Our records reflect that Mr. Justice received inpatient psychiatric care pursuant to Correction Law Article 16, Section 402 at Central New York Psychiatric Center." *Id.* According to Plaintiff, his counsel relied on the communication from Miraglia in preparing Plaintiff's pre-sentence memorandum as Miraglia knew he would. *Id.* at ¶14.

At Plaintiff's re-sentencing on January 14, 1993, he received sentences of a term of eight and one-third to twenty-five years on one of the manslaughter convictions and a term of five to fifteen years on the other, along with one year for each of the weapons charges. *Id.* at ¶ 15. Based upon his February 20, 1987, sentence and Miraglia's letter, Plaintiff believed that his

---

[4] New York Criminal Procedure Law ("CPL") § 330.20 sets forth the procedure for dealing with the processing and commitment of individuals found not guilty or pleading not guilty by reason of mental disease or defect.

prison sentence satisfied all statutory commitment requirements attendant to his having been found not guilty in the deaths of his father and brother by reason of mental disease or defect. *Id*. at ¶ 16.

Plaintiff proceeded to serve his prison sentences, and for over twelve years, Plaintiff was afforded no rights or procedural safeguards under CPL § 330.20, and no one from OMH took any action under the provision with regard to Plaintiff. *Id*. at ¶ 17. During that period, Plaintiff was on out-patient status for in excess of three years while in the prison population, and according to Plaintiff, he could have received a discharge order under CPL § 330.20(13) had he been subject to processing under § 330.20. *Id*. at ¶ 17.

Plaintiff's impending parole in 2005 received considerable media attention and led to a public outcry. *Id*. at ¶ 18. As a result, Miraglia and others from OMH, acting in concert with the New York State Division of Parole, sought to resurrect Plaintiff's § 330.20 status. *Id*. On September 8, 2005, the day before Plaintiff's scheduled release on parole, OMH filed an application for a release order pursuant to § 330.20 and a five year order of conditions under the section. *Id*. The order of conditions was granted in Erie County Supreme Court on January 3, 2006. *Id*. at ¶ 19.

Plaintiff thereafter initiated a 42 U.S.C. § 1983 action in the United States District Court for the Western District of New York to challenge the constitutionality of the imposition of § 330.20 status and an order of conditions on him. *See John D. Justice v. Terry King, et al.*, 6:08-CV-06417-FPG-MWP (W.D.N.Y.) ("*Justice v. King*"). The Court takes judicial notice that in his Second Amended Complaint in *Justice v. King*, Plaintiff has asserted claims against Miraglia and former OMH Commissioner Hogan for violation of his substantive and procedural

due process and equal protection rights under the Fourteenth Amendment by subjecting him to CPL § 330.20. (*Justice v. King*, Dkt. No. 414.) A motion to dismiss the Second Amended Complaint by Defendants Miraglia and Hogan, along with DOCCS employees Eugenio Russi and Thomas Tortora, is now pending in the Western District action. (*Justice v. King*, Dkt. Nos. 426, 448, 451.)

Plaintiff was returned to DOCCS custody on July 3, 2007, as the result of alleged parole violations. (Dkt. No. 12 at ¶ 23.) On February 23, 2011, while Plaintiff remained in DOCCS custody, the order of conditions issued under § 330.20 on January 3, 2006, was extended for five years by the New York State Supreme Court in Erie County. *Id*. at ¶ 24. During Plaintiff's incarceration for his parole violation, he was granted all of his good behavior allowances and was scheduled for conditional release from DOCCS on August 26, 2012. *Id*. at ¶ 25. OMH had not developed any discharge plans for Plaintiff and threatened him with a temporary confinement order ("TCO"), which caused Plaintiff to waive his conditional release on August 10, 2012. *Id*. at ¶ 26.

According to Plaintiff, after the use of TCOs was struck down as unconstitutional two months later in *Robert T. v. Sproat*, 955 N.Y.S.2d 134 (2d Dep't 2012)[5], he attempted to apply for a conditional release from DOCCS pursuant to New York Penal Law § 70.40(1)(b) and New York Corrections Law § 206 on December 2, 2012. *Id*. at ¶ 27. Plaintiff filed a grievance after DOCCS failed to respond to his request, and the grievance was denied at all levels. *Id*. at ¶ 28.

On February 14, 2013, Woodlock, as OMH Acting Commissioner, submitted a

---

[5] *Robert T. v. Sproat*, 955 N.Y.S.2d 134 (2d Dep't 2012), has since been reversed by the Court of Appeals, *sub nom. Allen B. v. Sproat*, 991 N.Y.S.2d 386 (2014).

recommitment application with respect to Plaintiff. *Id.* at ¶ 29. The application was supported

by the psychiatric examiner's affidavit of Defendant Belfi, in which Belfi averred, among other

things, that Plaintiff suffered from an antisocial personality disorder and should be considered

dangerously mentally ill, requiring involuntary commitment to a secure psychiatric facility. *Id*. at

¶ 30. Plaintiff has alleged that Belfi knew or should have known that the United States Supreme

Court had outlawed civil commitment based on an antisocial personality disorder. Id. at ¶ 31.

Therefore, according to Plaintiff, Belfi's affidavit was fraudulent and submitted in order to cause

Plaintiff irreparable harm and to wrongfully deprive him of liberty in violation of the Fifth and

Fourteenth Amendments, and subject him to cruel and unusual punishment in violation of the

Eighth Amendment. *Id*.

Belfi's affidavit also is alleged by Plaintiff to state that: "Another example of [Plaintiff's]

argumentative attitude is how he has filed 25 lawsuits in the last five years. He feels victimized

by these individuals he is suing and claims others are conspiring to wrongfully keep him

incarcerated or having to follow up with CPL 330.20 Order of Conditions. Therefore, at this

time, in addition to Antisocial Personality Disorder he also espouses narcissistic and paranoid

features." *Id*. at ¶ 32. Plaintiff claims that Belfi's statement concerning Plaintiff's numerous

lawsuits demonstrates that Belfi submitted the allegedly fraudulent affidavit to retaliate against

Plaintiff for the exercise of his First Amendment rights to access the courts. *Id*. Plaintiff further

claims that the statement demonstrates an illegal attempt by Belfi to negatively impact *Justice v.

King*. *Id*.

Plaintiff identifies Belfi's affidavit as the reason DOCCS did not allow him to apply for

Conditional Release and claims that Belfi has caused deprivation of Plaintiff's liberty in violation

of his due process rights, subjected him to cruel and unusual punishment, violated his right to

equal protection, retaliated against him for exercising his First Amendment right of access to

courts, and caused Plaintiff irreparable harm. *Id.* at ¶¶ 33-34.

### III. LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS

A defendant may move to dismiss a complaint "for failure to state a claim upon which

relief can be granted" under Rule 12(b)(6). The motion tests the formal legal sufficiency of the

complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which

requires that a complaint include "a short and plain statement of the claim showing that the

pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972). Satisfaction of

the requirement that a plaintiff "show" that he or she is entitled to relief requires that the

complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim

for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . .

[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged   but it has not shown   that the pleader is entitled to

relief." *Id.* at 679  (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there

are not "enough facts to state a claim that is plausible on its face." *Id.* at 570. While Rule

8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned,

the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation

marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual

enhancement'" does not suffice. *Id.* (citation omitted)

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In considering a Rule 12(b)(6) motion, "the court considers the complaint, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (A court may consider "any written instrument attached [to the complaint] as an exhibit or documents incorporated in it by reference."). "The mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the Plaintiff's complaint." *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at *6 and n.41, 2008 U.S. Dist. LEXIS 110029, at *26-27 and n.41 (N.D.N.Y. Oct. 22, 2008) (collecting cases); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (where a *pro se* is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint."), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gil v. Mooney*, 824 F.2d

192, 195 (2d Cir. 1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, Second Circuit considered plaintiff's affidavit submitted in opposition to motion to dismiss). The Court has taken judicial notice of papers filed in other litigation involving Plaintiff and has considered documents in Plaintiff's submissions in opposition to the extent they are consistent with the allegations in Plaintiff's Amended Complaint.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

## IV.    ANALYSIS

### A.    *Younger* Abstention

Plaintiff seeks what he identifies as declaratory relief against Defendants Woodlock and Belfi, declaring that the Defendants cannot proceed against him in a CPL § 330.20 recommitment application because: (1) § 330.20 was illegally added to Plaintiff's criminal sentence, in violation of CPL § 430.10 and Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the Constitution; and (2) the United States Supreme Court has

outlawed civil commitment based on an antisocial personality disorder. (Dkt. No. 12 at ¶ 39.)

Woodlock and Belfi are asking the Court to dismiss Plaintiff's claims for injunctive relief under the *Younger* abstention doctrine.[6] (Dkt. No. 21-1 at 10-11.) The *Younger* abstention doctrine derives from *Younger v. Harris*, 401 U.S. 37 (1971), and "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002). *Younger* abstention is intended to give "the respect to our co-equal sovereigns that principles of 'Our Federalism' demand." *Id*. at 198.

Although originally formulated in the context of criminal proceedings, the *Younger* abstention doctrine now applies with equal force to state "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communications, Inc. v. Jacobs*, ___ U.S. ___, 134 S.Ct. 584, 588 (2013) (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982) ("The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved."). Under *Younger*, federal courts must abstain from exercising subject matter jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings. *See Younger*, 401 U.S. at 43-44. Abstention is

---

[6] Although Plaintiff has not asked for injunctive relief in his Amended Complaint, (Dkt. No. 12 at ¶¶ 39, 41), he has done so in his papers in opposition to Defendants' motion. (Dkt. No. 25 at 2.) The *Younger* abstention doctrine applies to claims for both declaratory and injunctive relief in any event. *See Hansel v. Town Court*, 56 F.3d 391, 393 (2d Cir. 1995) (citing *Samuels v. Mackell*, 401 U.S. 66, 73 (1971)).

mandatory where: "(1) there is an ongoing state proceeding;[7] (2) an important state interest is implicated; and (3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009) (quoting *Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 105 (2d Cir. 1997) (internal quotation marks omitted)). Unless "state law clearly bars the interposition of the constitutional claims," and "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Kirschner v. Klemons*, 225 F.3d 227, 233 (2d Cir. 2000) (quoting *Middlesex County*, 457 U.S. at 432). Under *Younger*, "it is the plaintiff's burden to demonstrate that state remedies are inadequate, and defendants need not establish that state law definitively permits the interposition of constitutional claims." *Spargo v. New York State Com'n on Judicial Conduct*, 351 F.3d 65, 78 (2d Cir. 2003).

> **B.** **Applicability of *Younger* Abstention**

Plaintiff commenced this action to challenge the constitutionality of the filing of a recommitment application under CPL § 333.20(14) by Woodlock, and Belfi's allegedly false affidavit relying upon grounds for recommitment disallowed by the Supreme Court in *Foucha v. Louisiana*, 504 U.S. 71, 75-78 (1992) (recognizing a violation of due process where a state continues to confine a person found not guilty by reason of mental defect or disease after that person ceases to be both mentally ill and dangerous, and finding that the state's evidence in the commitment hearing failed to establish that the petitioner was both mentally ill and dangerous as

---

[7] The state court proceeding must not only be ongoing, it must, as in this case, have been initiated "before any proceedings of substance on the merits have taken place in the federal court." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) (citation and internal quotation marks omitted).

a result of his antisocial personality).[8]

The parties acknowledge that there is an ongoing recommitment proceeding in New York State Supreme Court. (Dkt. Nos. 12 at ¶ 29; 34 at 34.) Moreover, the proceeding, commenced on February 14, 2013, was ongoing at the time this action was commenced by Plaintiff on March 6, 2013. (Dkt. No. 1.) Therefore, the first requirement for *Younger* abstention ― that there be an ongoing state court action ― is satisfied.

The second requirement, that an important state interest be implicated, is also satisfied. *See Francis S. v. Stone*, 221 F.3d 100, 112 (2d Cir. 2000) (recognizing that state recommitment order under CPL § 330.20(14) upon finding that an insanity acquittee had a dangerous mental disorder had "a direct and substantial relationship with the State's legitimate concern for the potentiality of the deterioration of the acquittee's mental condition and relapse into dangerous behavior") (internal citation and quotation marks omitted); *People v. Stone*, 539 N.Y.S.2d 718, 722 (1989) ("The legislative objectives of ensuring the safety of the public, safeguarding the rights of defendants found not responsible, and providing for the treatment of acquittees suffering from a current mental illness are secured by [the] recommitment provisions [of CPL § 330.20(14)] designed to ensure that all persons who develop or relapse into a dangerous mental disorder during the pendency of the order of conditions are amenable to a secure psychiatric placement.") (citing 1981 Report of NY Law Rev Common., *The Defense of Insanity in New York State*, 1981 McKinneys Session Laws of NY, at 2251); *In re Ernst J.*, 739 N.Y.S.2d 737,

---

[8] The much broader issue of whether OMH violated Plaintiff's substantive and procedural due process and equal protection rights under the Fourteenth Amendment of the Constitution by determining that he was subject to CPL § 330.20 at the time of his parole in 2005, is being litigated in the Western District of New York. (*See Justice v. King*, Dkt. No. 414.)

738 (2d Dep't 2002) ("The recommitment provisions of CPL 330.20(14) have a direct and substantial relationship with the State's interest in protecting the public safety, safeguarding the rights of insanity acquittees, and providing treatment for those acquittees who suffer from a mental illness."); *see also Grist v. Norris town State Hosp.*, No. cv. A. 96-CV-8495, 1997 WL 661097, at *10, 1997 U.S. Dist. LEXIS 16320, at *28 (E.D. Pa. Oct. 22, 1997) (finding that involuntary commitment proceedings for persons found not guilty by reason of insanity, which were entirely controlled by Pennsylvania State law, implicated important state interests) (citing *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 463 (3d Cir. 1996) as recognizing the primacy of state law in the area of seeking to assure the availability of adequate treatment to mentally ill persons).

The third requirement for *Younger* abstention is also satisfied because Plaintiff has an avenue for review of constitutional claims raised in the recommitment proceeding in state court. Pursuant to CPL § 330.20(14), at any time while an order of conditions is in effect, the Commissioner of OMH may apply to the court that issued the order, or a superior court where the person subject to the order resides, for a recommitment order, when that person exhibits a dangerous mental disorder. *See Allen B. v. Sproat*, 991 N.Y.S.2d 386, 390 (2014). Under § 330.20(14), the insanity acquittee, his or her counsel, and the Mental Hygiene Legal Service must be given written notice of the recommitment application.[9] *Id.* Upon receipt of the

---

[9] The written notice provided to Plaintiff advised him that "the Mental Hygiene Legal Service, which is an agency of the Supreme Court of the State of New York, has been established to provide you with assistance and information as to your rights under the law and the procedures governing your legal relationship with the New York State Office of Mental Health. You are entitled to communicate with a representative of the service at any time. . . . You have the right to a court hearing on the above application for a subsequent retention order. You have the right to be represented by counsel at such hearing and you have the right to counsel assigned by the court

application, the court must order the insanity acquittee to appear for a hearing which must be

conducted by the court to determine if he or she has a dangerous mental disorder.  *Id*.  The

preponderance of the evidence standard applies to recommitment hearings.  *See Ernst J. v. Stone*,

452 F.3d 186, 196 (2d Cir. 2006).  An application for recommitment must be accompanied by the

affidavit of at least one psychiatric examiner in support of recommitment.  The affidavit, which

must be served on the insanity acquittee, must set forth a clinical diagnosis, a detailed analysis of

the insanity acquittee's mental condition that formed the basis for the examiner's opinion, and

the opinion.  CPL § 330.20(20).  The court may direct the OMH Commissioner to designate one

or more additional psychiatric examiners to conduct examinations if not satisfied, either on its

own motion or upon request of a party.  CPL § 330.20(15).

The insanity acquittee may challenge the recommitment application on constitutional

grounds in New York State court.  *See, e.g., Matter of Francis S.*, 640 N.Y.S.2d 840, 842 (1995)

(insanity acquittee moved to dismiss recommitment proceeding under § 330.20(14) on the

grounds that where acquittee was found not to have a dangerous mental disorder at his initial

hearing, due process and equal protection principles prohibit the Legislature from denying him

the procedural safeguards accorded those committed solely under the civil procedures of the New

York State Mental Hygiene Law);  *Ernst J.*, 739 N.Y.S.2d at 738 (challenge by insanity acquittee

to recommitment application on the grounds that the procedure, as applied to him, violated his

constitutional rights to due process and equal protection).

Under CPL § 330.20, an insanity acquittee has two avenues of redress but must make an

election of remedies as between the two.  CPL § 330.20(21).  The insanity acquittee may seek a

_____

if you are financially unable to obtain your own lawyer."  (Dkt. No. 5 at 12.)

permissive appeal to the Appellate Division under § 330.20 (21), or a rehearing and review proceeding under § 330.20(16). *See Jamie v. Consilvio*, 810 N.Y.S.2d 738, 744-45 (2006). Section 330.20(16) provides in relevant part that "[a]ny defendant who is in the custody of the commissioner pursuant to . . . a recommitment order, if dissatisfied with such order, may, within thirty days after the making of such order, obtain a rehearing and review of the proceedings in accordance with the provisions of section 9.35 . . . of the mental hygiene law."

Section 330.20(21)(a)(ii) provides in relevant part that "a defendant, or the mental hygiene legal service on his or her behalf, may appeal from any . . . recommitment order, or if the defendant has obtained a rehearing and review of any such order pursuant to subdivision sixteen of this section, from an order, not otherwise appealable as of right, issued in accordance with the provisions of section 9.35 . . . of the mental hygiene law, authorizing continued retention under the original order, provided, however, that a defendant who takes an appeal from a . . . recommitment order may not subsequently obtain a rehearing and review of such order pursuant to subdivision sixteen of this section." In those instances where the acquittee appeals unsuccessfully to the Appellate Division, he or she may appeal to the New York State Court of Appeals by permission of the Appellate Division or the Court of Appeals. § 330.20(21)(b).

Having determined that all three of the criteria for *Younger* abstention are present, and finding no factual showing of bad faith or harassment by Defendants in making the recommitment application, the Court recommends that the District Court abstain from exercising jurisdiction over Plaintiff's claims for declaratory and injunctive relief against Defendants Woodlock and Belfi. Because Plaintiff has sued Woodlock solely for declaratory and injunctive relief in her official capacity (Dkt. No. 12 at ¶ 5), the Court recommends that the Amended

Complaint be dismissed with prejudice as against her. The Court further recommends that inasmuch as Plaintiff has sued Belfi in his official capacity solely for declaratory and injunctive relief, that the Amended Complaint be dismissed as against him with prejudice in his official capacity.

**C.      Claims for Monetary Damages Against Defendant Belfi**

Plaintiff has sued Defendant Belfi in his personal capacity and seeks monetary damages against him on the grounds that: (1) Belfi's submission of a knowingly false affidavit relying improperly upon a diagnosis of antisocial personality in support of the recommitment application unlawfully denied Plaintiff the right to apply for a conditional release under Penal Law § 70.40(1)(b) and Corrections Law § 206, violating his rights to due process and equal protection under the Fourteenth Amendment, and subjecting him to cruel and unusual punishment in violation of the Eighth Amendment; and (2) Belfi's submission of the affidavit was done in retaliation for Plaintiff's exercise of his First Amendment right to access the courts for the redress of grievances. (Dkt. No. 12 at ¶¶ 37-38.)

The Second Circuit has found that abstention and dismissal under *Younger* are inappropriate where money damages are sought. *See, e.g., Rivers v. McLeod*, 252 F.3d 99, 101-02 (2d Cir. 2001) ("[A]pplication of the *Younger* doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983 . . . ."). The Second Circuit has, however, held that a stay of the claims for money damages pending resolution of the state court action may be appropriate where *Younger* abstention is applied to claims for declaratory and injunctive relief. *Kirschner,* 225 F.3d at 238 (citing *Giulini v. Blessing*, 654 F.2d 189, 192-94 (2d Cir. 1981)). The Supreme Court has noted that even if *Younger* can be applied to claims for

17

money damages, when money damages which could not be recovered in the pending state court action are sought in a federal court action, the federal action should be stayed rather than dismissed. *See Deakins v. Monaghan*, 484 U.S. 193, 201-03 (1988).

Defendant Belfi seeks dismissal of Plaintiff's claims for money damages against him on the grounds that: (1) Plaintiff has failed to exhaust his administrative remedies; (2) Plaintiff has failed to state a claim for relief; and (3) Belfi is entitled to qualified immunity and the claims are premature. (Dkt. No. 21-1 at 3.) The Court has concluded that addressing and making recommendations with regard to Belfi's failure to exhaust argument and Plaintiff's cruel and unusual punishment and retaliation claims against Belfi will not have any undue impact on the pending state court recommitment proceeding.

1.    Failure to Exhaust

Belfi relies upon the exhaustion requirements in the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997(e) in seeking dismissal of Plaintiff's claims against Belfi for money damages. *Flaherty v. Coughlin*, 713 F.2d 10, 13-14 (2d Cir. 1983). As succinctly outlined by my colleague, Magistrate Judge David E. Peebles:

> The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. An inmate plaintiff's complaint is subject to dismissal if the evidence establishes that he or she failed to properly exhaust available remedies prior to commencing the action . . . . Proper exhaustion requires a plaintiff to procedurally exhaust his or her claims by complying with the system's critical procedural rules. Complete exhaustion has not occurred, for purposes of the PLRA, until all of the steps of that available process have been taken.

*Bailey v. Fortier*, 09-CV-0742 (GLS/DEP), 2012 WL 6935254, at *4, 2012 U.S. Dist. LEXIS 185178, at *11-13 (N.D.N.Y. Oct. 4, 2012) (citations and punctuation omitted).[10]  Belfi has cited no authority for the application of the PLRA exhaustion requirements to Plaintiff's claims against him arising out of his submission of an affidavit in support of the OMH recommitment application under CPL § 330.20(14), and the Court has found none.  Plaintiff's claims are not about circumstances or episodes involving Plaintiff's prison life but rather the recommitment proceeding in which the affidavit was submitted.  Inasmuch as Belfi is not employed by DOCCS, DOCCS' well-established inmate grievance procedure found at N.Y. Comp.Codes R. & Regs. tit. 7, Part 701 (2013), would not be available to Plaintiff.

Belfi also relies upon the decision in *Pollack v. Paterson*, No. 10 Civ. 6297 (JGK)(JLC), 2011 WL 710605, at *4, 2011 U.S. Dist. LEXIS 19755, at *12-13 (S.D.N.Y. Mar. 1, 2011) in support of his failure to exhaust argument.  (Dkt. No. 21-1 at 14.)  His argument is misplaced because *Pollack* was a habeas corpus proceeding in which the court found the well-established habeas exhaustion requirements applicable to insanity acquittees held pursuant to CPL § 330.20.  This is a civil rights action one brought under § 1983.

Given the foregoing, Belfi is not entitled to dismissal of the money damages claims against him on failure to exhaust grounds.

### 2.    Cruel and Unusual Punishment Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment."  U.S.

---

[10]  Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Const. amend. VIII.  The Second Circuit, in addressing the needs protected by the Eighth

Amendment, has stated that sentenced prisoners are entitled only to "adequate food, clothing,

shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir.

1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979).  Not every

governmental action affecting the interests or well-being of a prison inmate is actionable under

the Eighth Amendment.

In his original Complaint, Plaintiff appeared to claim that Belfi's filing of an allegedly

false and fraudulent affidavit in the recommitment proceeding recommending recommitment

based upon Plaintiff's antisocial personality disorder constituted cruel and unusual punishment.

(Dkt. No. 1 at ¶¶ 30, 31, 32 and p. 10.)  On initial review, Judge Mordue found that, at best,

Plaintiff's Eighth Amendment claim could be interpreted as a claim challenging his mental

health treatment.  (Dkt. No. 9 at 9-10.)  Finding the Complaint was devoid of factual allegations

that Belfi had ever treated Plaintiff, Judge Mordue dismissed Plaintiff's Eighth Amendment

claim on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A.  *Id*. at 10.

Plaintiff was granted leave to file an amended complaint.  *Id.* at 14.  In his Amended

Complaint, Plaintiff has alleged that Belfi violated his Eighth Amendment right to be free from

cruel and unusual punishment by filing a knowingly false affidavit that resulted in DOCCS

unlawfully denying Plaintiff the right to apply for a conditional discharge.  (Dkt. No. 12 at ¶ 37.)

Even assuming that Belfi, who is not a prison official, could be held liable for cruel and unusual

punishment in connection with an application for Plaintiff's civil recommitment, the Eighth

Amendment claim in Plaintiff's Amended Complaint does not involve a deprivation of

"adequate food, clothing, shelter, sanitation, medical care and personal safety," the needs

protected on an Eighth Amendment claim for cruel and unusual punishment. *See Wolfish,* 573

F.2d at 125. Furthermore, the Amended Complaint is devoid of specific factual allegations that

would give rise to the inference that Belfi intended for his affidavit to result in Plaintiff being

deprived of one of life's necessities, or that Belfi's affidavit had anything whatsoever to do with

DOCCS' alleged denial of Plaintiff's right to apply for a conditional discharge.[11]

Therefore, the Court recommends that Plaintiff's Eighth Amendment claim for cruel and

unusual punishment against Belfi be dismissed for failure to state a claim. The Court further

recommends that because Plaintiff has already been allowed one opportunity to amend, and his

Amended Complaint fails to indicate that he could state a valid Eighth Amendment claim if

given a further opportunity to amend, the Amended Complaint be dismissed with prejudice. *See*

*Cuoco*, 222 F.3d at 112 (requiring court to grant leave to amend at least once where a liberal

reading of the complaint indicates a valid claim might be stated).

### 2.     Retaliation Claim

Plaintiff claims that Belfi submitted a false affidavit in the recommitment proceeding in

retaliation for Plaintiff's exercise of his First Amendment right to file lawsuits. (Dkt. No. 12 at ¶

38.) The sole factual allegation in Plaintiff's Amended Complaint in support of Plaintiff's

---

[11] In *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court explained that Eighth Amendment claims have both objective and subjective components. Objectively, the deprivation must be "sufficiently serious" to deny a prisoner "the minimal civilized measure of life's necessities." *Id*. (citation and internal quotation marks omitted). The subjective requirement, which follows the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," requires that a defendant have a state of mind of "deliberate indifference." *Id.* Deliberate indifference has been defined as knowledge and disregard of "an excessive risk to inmate health or safety," by an official who "is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [who has drawn] the inference. *Id*. (citation omitted).

retaliation claim is Belfi's reference to Plaintiff having filed twenty-five lawsuits in the past five years. (Dkt. No. 12 at ¶ 32.) As noted above, in the Psychological Consultation Report, attached to Belfi's affidavit and quoted in part in Plaintiff's Amended Complaint, Belfi wrote: "Another example of his argumentative attitude is how he has filed 25 lawsuits in the last 5 years. He feels victimized by these individuals he is suing and claims others are conspiring to wrongly keep him incarcerated or having to follow up with CPL 330.20 Order of conditions. Therefore, at this time in addition to Antisocial Personality Disorder, he also espouses narcissistic and paranoid features." (Dkt. No. 5 at 27.)

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty,* 713 F.2d at 13. As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506 (2002).

To prevail on a retaliation claim under § 1983, a plaintiff must prove that: (1) the speech or conduct at issue was "protected;" (2) the defendant took "adverse action" against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action   in

other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Pidlypchak*, 389 F.3d at 380 (citing *Dawes,* 239 F.3d at 492).

Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Those factors include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation. *Id.* (citing *Colon*, 58 F.3d at 872-73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.* "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty*, 713 F.2d at 13.

The filing of a lawsuit is a constitutionally protected activity. *Baskerville*, 224 F. Supp. 2d at 731 (citing *Bounds v. Smith*, 430 U.S. 817, 821-32 (1977). However, the wholly conclusory characterization of Belfi's reference to the lawsuits in his psychological assessment of Plaintiff as retaliatory, without any facts that would give rise to the inference that the Report was written in retaliation for the filing of the lawsuit, fails to state a plausible claim of retaliation.[12] *See Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) (Claims of retaliation must be "supported by specific and detailed factual allegations" and not stated "in wholly conclusory

---

[12]  The Amended Complaint is devoid of factual allegations connecting Belfi to the referenced lawsuits as a party or in any manner at all other than his consideration of the number of lawsuits commenced by Plaintiff in his psychological assessment.

terms.")  (quoting *Flaherty*, 713 F.2d at 13); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d

Cir. 1996) (wholly conclusory claims of retaliation "can be dismissed on the pleadings alone");

*Gill,* 824 F.2d at 194 (same).

When Judge Mordue dismissed Plaintiff's retaliation claim in his original Complaint on

initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A, Plaintiff was granted

leave to file an amended complaint.[13]  (Dkt. No. 9 at 14.)  Inasmuch as Plaintiff's Amended

Complaint fails to set forth anything more than a conclusory assertion that Belfi filed the

affidavit in retaliation for Plaintiff's lawsuits, the Court recommends that his retaliation claim

against Belfi be dismissed for failure to state a claim.  The Court further recommends that

because the Amended Complaint gives no indication that Plaintiff could state a claim for

retaliation given yet another opportunity to amend, the dismissal be with prejudice.  *See Cuoco*,

222 F.3d at 112.

3.      Stay of Plaintiff's Remaining Claims

As noted above, the Second Circuit has recognized that a stay of a federal court claim for

money damages may be appropriate in cases in which claims for declaratory or injunctive relief

have been dismissed under the *Younger* abstention doctrine.  *See Kirschner*, 225 F.3d at 238.

Furthermore, the Supreme Court has indicated that where money damages sought in a federal suit

cannot be obtained in the state court proceeding, the federal suit should be stayed, even if the

money damages sought could be obtained in a separate state proceeding.  *See id.* at 238*, Deakins*,

484 U.S. at 201-03.

---

[13]  The sole allegation supporting Plaintiff's retaliation claim against Belfi in his original
Complaint was that "Dr. Belfi also made the fraudulent Physician's Affidavit in retaliation
against your Plaintiff for bringing OMH to a lawsuit in <u>Justice v. King</u>. . . ."  (Dkt. No. 1 at ¶ 31.)

Plaintiff has asserted claims for money damages against Belfi for violation of his due process and equal protection rights under the Fourteenth Amendment. (Dkt. No. 12 at ¶37.) Those claims arise out of the affidavit submitted by Belfi in the pending recommitment proceeding under CPL § 330.20(14). *See* CPL §§ 330.20(14) and (20).

CPL § 330.20 includes no provision for the recovery of damages by an insanity acquittee in a recommitment proceeding. Furthermore, in *Justice v. State*, 985 N.Y.S.2d 294 (3d Dep't 2014), *lv. denied*, 985 N.Y.S.2d 294 (2014), another lawsuit brought by Plaintiff, the New York court reasoned that "[b]ecause CPL 330.20 does not expressly confer upon insanity acquittees the right to seek civil damages for any failure by the Commissioner to follow the statute's provisions, recovery may be had only if a private right of action can be implied." *Id*. at 296 (citation and internal quotation marks omitted). The court found that an insanity acquittee has no private right of action for damages under CPL § 330.20.

Moreover, because the affidavit under attack is a statutorily required component of the pending recommitment proceeding, CPL § 330.20(20), a federal court determination of Plaintiff's money damage claims for violation of due process and equal protection, or a determination of Belfi's entitlement to qualified immunity with regard to those claims, could unduly interfere with the recommitment proceeding. *See Rodgers v. Cartagena*, No. 10-CV-9285(NRB), 2011 WL 724680, at *1, 2011 U.S. Dist. LEXIS 21080, at *1-2 (S.D.N.Y. Feb. 25, 2011) (staying claim for damages where proceeding with case in federal court would interfere with ongoing state court proceeding).

Therefore, the Court recommends that Plaintiff's claims for violation of his rights to due process and equal protection be stayed pending determination of the state recommitment

proceeding.

**ACCORDINGLY**, it is hereby

**RECOMMENDED**, that Defendants Woodlock and Belfi's motion to dismiss pursuant to Rule 12(b)(6) (Dkt. No. 21) be **GRANTED IN PART**; and it is further

**RECOMMENDED**, that the District Court abstain under *Younger* from exercising jurisdiction over Plaintiff's claims for declaratory and injunctive relief against Defendants Woodlock and Belfi; and it is further

**RECOMMENDED**, that the Amended Complaint be **DISMISSED** as against Defendant Woodlock; and it is further

**RECOMMENDED**, that the claims asserted against Defendant Belfi in his official capacity (claims for declaratory and injunctive relief) in the Amended Complaint, be **DISMISSED**; and it is further

**RECOMMENDED**, that Plaintiff's Eighth Amendment claim for cruel and unusual punishment and First Amendment retaliation claim against Defendant Belfi be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that the action be stayed as to the remaining claims (claims for monetary damages against Defendant Belfi for violation of his rights to due process and equal protection under the Fourteenth Amendment) pending the determination of the CPL § 330.20(14) recommitment application proceeding now pending in New York State Supreme Court; and it is hereby

**ORDERED**, that the Court provide Plaintiff with copies of the unpublished decisions in *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153 (N.D.N.Y. Oct. 22, 2008); *Grist v. Norris*

*town State Hosp.*, No. CV. A. 96-CV-8495, 1997 WL 661097 (E.D. Pa. Oct. 22, 1997); *Bailey v. Fortier***,** 09-CV-0742 (GLS/DEP), 2012 WL 6935254 (N.D.N.Y. Oct. 4, 2012); *Pollack v. Paterson*, No. 10 Civ. 6297 (JGK)(JLC), 2011 WL 710605 (S.D.N.Y. Mar. 1, 2011); and *Rodgers v. Cartagena*, No. 10-CV-9285, 2011 WL 724680 (S.D.N.Y. Feb. 25, 2011).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  November 24, 2014
             Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

27

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Everton BAILEY, Plaintiff,
v.
M. FORTIER, Defendant.

Civ. Action No. 9:09–CV–0742 (GLS/DEP).
Oct. 4, 2012.

Hancock Estabrook LLP, Michael J. Sciotti, Esq., Robert Thorpe, Esq., of Counsel, Syracuse, NY, for Plaintiff.

Hon. Richard S. Hartunian, United States Attorney, Charles E. Roberts, Esq., Assistant U.S. Attorney, of counsel, Syracuse, NY, for Defendant.

*REPORT AND RECOMMENDATION*
DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** Plaintiff Everton Bailey, a federal prison inmate, has commenced this *Bivens*[FN1] action against defendant Michelle Fortier, a corrections officer stationed at the prison facility in which Bailey was confined at the relevant times, alleging deprivation of his civil rights. Bailey's claims are based upon Fortier's alleged failure to protect him from an assault by a cellmate, despite having registered prior complaints expressing fear for his safety.

> FN1. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Currently at the forefront of the action is the threshold question of whether Bailey, who admits that he did not file a grievance following the procedures in place at Bureau of Prisons ("BOP") facilities, should be excused from the requirement of exhausting administrative remedies before commencing suit due to the alleged refusal of prison officials to provide him with the forms necessary to file a grievance. Because I find, based upon an evidentiary hearing conducted, that Bailey was not prevented by the actions of prison officials from filing a grievance regarding his claim against Fortier, and that he has offered no special circumstances providing a basis to excuse his failure to exhaust administrative remedies, I recommend that his complaint be dismissed on this procedural basis, without addressing its merits.

I. *BACKGROUND*

Bailey is a federal prison inmate currently being held in the custody of the BOP as a result of a 2007 criminal conviction entered in the United States District Court for the Eastern District of Pennsylvania. *See generally* Complaint (Dkt. No. 1); *see also* VanWeelden Decl. (Dkt. No. 10–4) ¶ 5; June 20, 2012 Hearing Transcript (Dkt. No. 44) at p. 84.[FN2] While he is presently housed in another BOP facility, at times relevant to this litigation Bailey was designated by the BOP to the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), located in Ray Brook, New York. *Id.*

> FN2. The June 20, 2012 Hearing Transcript (Dkt. No. 44) will hereinafter be cited as "Tr. ____."

On the morning of February 23, 2009, while housed in a six-person cell in the Mohawk Housing Unit at FCI Ray Brook, Bailey was confronted and physically assaulted by one of his cellmates after being accused of stealing that inmate's prayer oil. Complaint (Dkt. No. 1) ¶¶ 8–9; *see also* VanWeelden

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

Decl. (Dkt. No. 10–4) Exh. D. Bailey reported the incident to Fortier, and requested that he be moved to another cell. Complaint (Dkt. No. 1) ¶ 10. That request was denied, and Bailey was directed by Fortier to return to his cell in light of an impending inmate count. *Id.* at ¶ 11.

Following the inmate count, Bailey again was accosted by the same inmate, who on this occasion threw hot oil from a ceramic mug onto his face.[FN3] Complaint (Dkt. No. 1) ¶ 13; VanWeelden Decl. (Dkt. No. 10–4) Exh. D; Tr. 100, 145. Bailey suffered second degree burns to his face resulting in his being hospitalized at an outside medical facility for a period of fourteen days. Complaint (Dkt. No. 1) ¶¶ 13–14; Tr. 32, 84–85. Upon his return to FCI Ray Brook, Bailey was placed in a special housing unit ("SHU") cell, where he remained until he was transferred to another BOP facility. Tr. 59–60, 85.

> **FN3.** According to Bailey, there were no corrections officers present in his cell unit at the time of the assault. Complaint (Dkt. No. 1) ¶ 13.

**\*2** The BOP has established an Administrative Remedy Program ("ARP"), comprised of a four-step administrative process through which inmates can seek formal internal review of any complaint regarding any aspect of their imprisonment. Tr. 10; 28 C.F.R. § 542.10 *et seq.; see also Macias v. Zenk,* 495 F.3d 37, 42 (2d Cir.2007). In accordance with the established ARP protocol, an inmate must first attempt informal resolution of his or her complaint by presenting the issue informally to staff, and staff must attempt to resolve the issue. 28 C.F.R. § 542.13(a); *see also Johnson v. Testman,* 380 F.3d 691, 693 (2d Cir.2004). This informal, initial procedure typically begins with the filing of a "cop-out," which can be submitted either on a BP–8 form available to inmates through several sources, including their assigned counselors, or on paper of any other description. Tr. 10, 22, 27, 66–67, 129, 142.

If the complaint cannot be resolved informally, the inmate may next submit a formal written Administrative Remedy Request ("ARR") to the warden of the facility, utilizing a BP–9 form, within twenty calendar days of the event that generated the inmate's complaint.[FN4] Tr. 22, 32, 44; 28 C.F.R. § 542.14(a); *see also Johnson,* 380 F.3d at 693. That twenty-day period, however, can be extended in appropriate circumstances.[FN5] Tr. 33, 54, 144. If that formal request is denied, the inmate may next appeal the matter to the appropriate BOP Regional Director, utilizing a BP–10 form, within twenty calendar days of the date the grievance is denied by the facility warden. Tr. 22; 28 C.F.R. § 542.15(a); *see also Johnson,* 380 F.3d at 693. An unfavorable decision from the Regional Director can then be appealed to the General Counsel's office, utilizing a BP–11 form, within twenty calendar days of the date of the Regional Director's response. Tr. 22; 28 C.F.R. § 542.15(a).

> **FN4.** Plaintiff was aware of the twenty-day limitation for filing a BP–9 form to initiate the formal grievance process. Tr. 103.

> **FN5.** Here, the record demonstrates that in light of his circumstances, including the fourteen-day period of hospitalization following the incident, Bailey almost certainly would have been granted relief from that requirement had such a request been made. *See* Tr. 43, 144. I note, parenthetically, that the handbook provided to inmates at FCI Ray Brook does not address the possibility of requesting an extension of the twenty-day time limit for filing a BP–9. *See* Tr. 34, 43.

Despite the existence of the ARP, Bailey did not avail himself of that process by filing a grievance regarding the assault or the defendant's alleged failure to protect him from it. Tr. 101–02, 106. Bailey claims that he requested the appropriate forms for com-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

mencing the grievance process from several prison workers, including Hawley Snyder, Barbara Darrah, and the warden at FCI Ray Brook. Tr. 86–88, 91, 93–95, 107–09. Employees at FCI Ray Brook, however, uniformly testified that Bailey never requested the appropriate grievance forms from them. *See* Tr. 72, 131, 146–47, 153, 155, 168; *see also* Tr. 49 (Robin Van Weelden); 161 (Jean Marie Diehl); 166 (Michelle Gonyea). I credit the testimony of defendant's witnesses and find that Bailey failed to ask his corrections counselor, or any other BOP employee at FCI Ray Brook, for the necessary forms to commence the grievance process.

The record also reflects that Bailey had abundant opportunity to secure the necessary grievance forms. In February and March of 2009, he was assigned a unit team that included Barbara Darrah, his unit manager; Michelle Gonyea, a case worker; Hawley Snyder, his assigned corrections counselor; and one other corrections counselor.[FN6] Tr. 46, 86, 140–41. Members of Bailey's unit team, particularly his corrections counselor, were in frequent contact with him. *See, e.g.,* Tr. 126, 129–30, 140–41, 165.

> [FN6]. Jean Marie Diehl took over as plaintiff's correction counselor in or about September 2009, shortly before Snyder's retirement from the BOP. Tr. 140, 163.

*3 Various other BOP officials were also in regular contact with Bailey, making periodic rounds of the FCI Ray Brook SHU. Tr. 35. For example, at the times relevant to this litigation, the facility's warden typically visited the SHU every Wednesday morning, normally accompanied by Robin Van Weelden, who in February 2009 served as a legal assistant, as well as one or two associate wardens, a corrections captain, and unit team members. Tr. 35, 55. When making those rounds the group would proceed from cell to cell, knocking on doors and asking whether an inmate in a particular cell wished to voice any needs. Tr. 57. In addition, Barbara Darrah, as a unit manager, was

required to visit inmates in the SHU twice weekly, although she testified that she was in that portion of the facility "pretty much daily." Tr. 126. When visiting the SHU, Darrah generally carried with her a folder of various forms, including BP–8, BP–9, BP–10, BP–11 and cop-out forms, earning her the nickname "the form lady." Tr. 70–71, 120, 124–27, 131. Like the warden and the warden's group, when visiting the SHU facility Darrah normally would proceed from cell-to-cell. Tr. 128. Similarly Michelle Gonyea, as plaintiff's case manager during February and March of 2009, was required to visit the SHU at least once weekly. Tr. 165.

Despite all of those visits and requests as to whether he needed anything, Bailey did not ask any of those individuals for the forms necessary to grieve Fortier's alleged failure to protect him from harm. Tr. 161–62, 166, 49–50, 72, 132, 144, 154–55, 161, 166.

As previously indicated, plaintiff was absent from FCI Ray Brook receiving outside treatment for his injuries during the fourteen-day period immediately following the inmate assault. In accordance with FCI Ray Brook policy requiring visits by prison officials to any inmate hospitalized for more than five days, Darrah, as plaintiff's unit manager, visited him in or about March of 2009, while he was a patient at the Adirondack Medical Center in Saranac Lake, in order to insure that his needs were being met. Tr. 133. When asked on that occasion whether he needed anything, Bailey replied, "No." [FN7] *Id.*

> [FN7]. During the hearing Bailey testified that he did not recall Darrah visiting him. *See* Tr. 114. Once again, I credit the testimony of Darrah over that of the Bailey with respect to this issue.

**II. *PROCEDURAL HISTORY***
Bailey commenced this action on June 29, 2009. Dkt. No. 1. His complaint identifies Corrections Of-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

ficer M. Fortier as the sole named defendant, and alleges that she violated his constitutional rights by failing to protect him from foreseeable harm. *Id.*

On January 8, 2010, prior to answering, Fortier moved to dismiss Bailey's complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56. Dkt. No. 10. The sole basis for Fortier's motion was her contention that Bailey's complaint is subject to dismissal based upon his failure to exhaust available administrative remedies before commencing suit, as required under 42 U.S.C. § 1997e(a). That motion resulted in my issuance of a report on August 30, 2010, recommending that the motion be denied, based upon the existence of genuine disputes of material fact to be resolved before addressing whether a proper basis for excusing the governing exhaustion requirement had been demonstrated. Dkt. No. 19. That recommendation was adopted by Chief District Judge Gary L. Sharpe on October 12, 2010. Dkt. No. 21.

**\*4** Following the issuance and acceptance of my report and recommendation, the parties were afforded the opportunity to engage in discovery, and a scheduling order was entered requiring, *inter alia,* that any additional dispositive motions be filed on or before October 3, 2011. *See* Dkt. No. 23. All deadlines under that scheduling order have passed, without the filing of any additional motions, and the case is now trial-ready. In light of the existence of a threshold procedural issue regarding exhaustion, the matter was referred to me for the purpose of conducting an evidentiary hearing, pursuant to *Messa v. Goord,* 652 F.3d 305 (2d Cir.2011), in order to develop the record concerning Bailey's efforts to satisfy his exhaustion requirement. *See* Text Entry 11/02/11. That hearing was conducted on June 20, 2012, *see* Text Entry 6/20/12, and, following the close of the hearing, decision was reserved pending briefing by the parties.[FN8,FN9] ,

FN8. The hearing was conducted by video conference, with Bailey participating and testifying from the Kentucky federal correctional facility in which he is currently being held, pursuant to Rule 43(a) of the Federal Rules of Civil Procedure. *See Rivera v. Santirocco,* 814 F.2d 859, 862 (2d Cir.1987). At the outset of the hearing I placed upon the record the factors which I considered in declining to exercise my discretion to require that Bailey be produced in person for the evidentiary hearing. *See* Tr. 3.

FN9. Attorney Michael J. Sciotti, Esq., of the firm of Hancock & Estabrook, LLP, was appointed in January 2012 to represent the plaintiff in this action, *pro bono,* at the hearing. The court wishes to express its thanks to Attorney Sciotti and his co-counsel, Robert Thorpe, Esq., for their energetic and diligent efforts on behalf of the plaintiff.

III. *DISCUSSION*

A. *Governing Legal Principles*

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006); *Hargrove v. Riley,* No. CV–04–4587, 2007 WL 389003, at \*5–6 (E.D.N.Y. Jan.31, 2007). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). An inmate plaintiff's complaint is subject to dismissal if the evidence establishes that he or she failed to properly exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94–95, 126 S.Ct. at 2387–88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388; *see also Macias,* 495 F.3d at 43 (citing *Woodford* ). Complete exhaustion has not occurred, for purposes of the PLRA, until all of the steps of that available process have been taken. *Macias,* 495 F.3d at 44; *see also Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir.2009); *Strong v. Lapin,* No. 90–CV–3522, 2010 WL 276206, at *4 (E.D.N.Y. Jan.15, 2010) ("Until the BOP'S Central Office considers the appeal, no administrative remedy is considered to be fully exhausted.").

**\*5** In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted in the event of a failure to satisfy the PLRA's exhaustion requirement. *Macias,* 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the prescribed rubric, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendant should be deemed to have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it, or whether, through the defendant's own actions preventing the

plaintiff from exhausting otherwise available remedies, he or she should be estopped from asserting failure to exhaust as a defense. *Id.* In the event the proffered defense survives these first two levels of scrutiny, the court must determine whether the plaintiff has established the existence of special circumstances sufficient "to justify the failure to comply with applicable administrative procedural requirements.[FN10,FN11] *Id.*

> **FN10.** In *Macias,* which, like this action, involved an Eighth Amendment claim under *Bivens,* as well as claims under the Federal Court Claims Act, 28 U.S.C. § 2671 *et seq.,* defendants asserted that plaintiff's complaint was subject to dismissal under the PLRA based upon his failure to exhaust available administrative remedies. *Macias,* 495 F.3d at 40. Reiterating the importance of exhaustion in both a substantive and a procedural sense, the Second Circuit concluded that, while a prisoner may have substantively exhausted remedies by making informal complaints regarding the conditions at issue, the PLRA, as illuminated by *Woodford,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368, requires proper procedural exhaustion through the available grievance channels. *Id.* at 41. The court left open, however, the possibility that, notwithstanding the Supreme Court's decision in *Woodford,* a defendant could be precluded from asserting failure to exhaust available administrative remedies in the event of a finding that threats by prison officials may have deterred compliance with the PLRA exhaustion requirements, including under *Hemphill. Id.* at 44–45. The court in *Macias* also noted that the plaintiff in that case did not assert that the available internal remedial scheme was so confusing as to excuse his failure to avail himself of that process, thereby obviating the need for the court to determine what effect, if any, *Woodford*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

would have upon the *Hemphill* holding to the effect that a reasonable misinterpretation of the available scheme could justify an inmate's failure to follow the procedural rules. *See Amador v. Superintendents of Dep't of Correctional Serv.,* No. 03 CIV. 0650 (KTD/CWG), 2007 WL 4326747, at \*6 (S.D.N.Y. Dec.4, 2007). It therefore appears that the teachings of *Hemphill* remain intact, at least with regard to the first two points of inquiry. *Id.* at \*7.

FN11. In practicality, these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap. *See Hargrove,* 2007 WL 389003, at \*8 n. 14; *see also Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004).

**B.** *Burden of Proof*

Before applying the foregoing legal principles, I must first consider who bears the burden of proof, and whether that burden shifts throughout the analysis prescribed under *Hemphill.*

As an affirmative defense, *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), exhaustion is a claim upon which the party asserting it typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence. *Soria v. Girdich,* No. 9:04–CV–727, 2007 WL 4790807, at \*2 (N.D.N.Y. Dec. 2007) (DiBianco, M.J.) (citing *McCoy v. Goord,* 255 F.Supp.2d 233, 247 (S.D.N.Y.2003); *McEachin v. Selsky,* No. 9:04–CV–83(FJS/RFT), 2005 WL 2128851, at \*4 (N.D.N.Y. Aug.30, 2005) (Scullin, C.J.) (citing *Howard v. Goord,* No. 98–CV–7471, 1999 WL 1288679, \*3 (E.D.N.Y. Dec. 28, 1999)), *aff'd in part, vacated in part,* 225 F. App'x 36 (2d Cir.2007). The issue is somewhat complicated, however, by consideration of the three-part analysis mandated by *Hemphill* and related cases because that line of cases incorporates concepts—such as estoppel, for example—that typically require the party asserting them to bear the ultimate burden of proof. *See e.g., Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir.2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel ...."); *In re Heflin,* 464 B.R. 545, 554 (D.Conn.2011) ("The burden of providing every element of an estoppel is upon the party seeking to set up the estoppel.") (citing *Comm'r v. Union Pac. R.R. Co.,* 86 F.2d 637, 640 (2d Cir.1936)).

**\*6** Also complicating matters is the fact that several courts have held that once a defendant satisfies the burden of demonstrating that an inmate has failed to exhaust administrative remedies, it then becomes incumbent upon the plaintiff to counter with a showing of unavailability, estoppel, or special circumstances. *See, e.g., Murray v. Palmer,* No. 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, at \*4 and n. 17 (N.D.N.Y. Mar.31, 2010) (Suddaby, J.); *see also Calloway v. Grimshaw,* No. 9:09–CV–1354, 2011 WL 4345299, at \*5 and n. 5 (N.D.N.Y. Aug.10, 2011) (Lowe, M.J.) (citing cases); *report and recommendation adopted,* 2011 WL 4345296 (N.D.N.Y. Sep.15, 2011) (McAvoy, S.J.); *Cohn v. KeySpan Corp.,* 713 F.Supp.2d 143, 155 (E.D.N.Y.2010) (finding that, in the employment discrimination context, defendants bear the burden of establishing the affirmative defense of failure to timely exhaust his administrative remedies, but once defendants have done so, the plaintiff must plead and prove facts supporting equitable avoidance of the defense.). Those decisions, while referencing the burden of proof on an affirmative defense, seem to primarily address an inmate's burden of *production,* or of going forward, to show facts that would form the basis for finding of unavailability, estoppel, or a finding of special circumstances, rather than speaking to the ultimate burden of *persuasion.*

I have been unable to uncover any cases squarely holding that the defendant bears the ultimate burden of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

proof with regard to all elements of a *Hemphill* analysis. In the final analysis, however, *Hemphill* addresses all of the elements a court is required to consider when analyzing an exhaustion defense. *See Macias,* 495 F.3d at 41 ("In *Hemphill* we "read together" [a series of cases] and formulated a three-part *test* ....") (emphasis added). Therefore, I recommend a finding that, while the burden of production may shift to the plaintiff when a court undertakes a *Hemphill* analysis, the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant. *See Soria,* 2007 WL 4790807, at *2 ("[A]s with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies.").

C. *Application of Governing Legal Principles*

1. *Availability of Administrative Remedy*

In this instance, the question of whether the ARP was available to Bailey is at the heart of the exhaustion analysis. The hearing testimony confirmed, and Bailey admitted, that at all times relevant to this litigation, there was an inmate grievance procedure in place at FCI Ray Brook. This, however, does not necessarily mean that it was "available" to the plaintiff.

Bailey contends that the grievance process was not available to him in light of the alleged refusal of prison officials to provide him with the forms necessary to file an ARR and pursue the grievance to culmination. Having considered the competing testimony, however, I conclude that Fortier has established, by a preponderance of the evidence, that the forms necessary to pursue a grievance in accordance with the ARP in place at FCI Ray Brook were available to Bailey through several sources, but were not requested. As such, Fortier has satisfied the first *Hemphill* factor.

2. *Presentation of Defense/Estoppel*

**\*7** The focus of the second prong of the *Hemphill* analysis is upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (citations omitted). In her answer, Fortier raised exhaustion as a defense in a timely fashion. *See* Answer (Dkt. No. 22) Second Defense ("Plaintiff clearly failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).)." Bailey argues, however, that his failure to follow the prescribed grievance process was a direct result of the refusal of prison officials to cooperate in his efforts to grieve the matter.

" 'Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.' " *Atkins v. Menard,* No. 9:11–CV–9366, 2012 WL 4026840, at *3 (N.D.N.Y. Sept.12, 2012) (Suddaby, J.) (citing *Murray,* 2010 WL 1235591, at *5 and n. 26 (collecting cases)). Put differently, a plaintiff must allege that a defendant named in the lawsuit acted to interfere with his ability to exhaust in order to establish a basis to estop that defendant from invoking the exhaustion defense. *Calloway,* 2011 WL 4345299, at *4 (citing *Bennett v. James,* 737 F.Supp.2d 219, 226 (S.D.N.Y.2010), *aff'd,* 441 F. App'x 816 (2d Cir.2011)) (other citations omitted).

The question of whether, in this instance, prison officials should be estopped from asserting failure to exhaust as an affirmative defense as a result of their conduct is inextricably intertwined with the question of availability of the remedy. Assuming, however, that this presents a distinct inquiry, the court must examine whether, through her conduct, Fortier has provided a basis to estop her from asserting an exhaustion defense.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

In this instance, Bailey does not allege that Fortier engaged in a campaign to preclude him from filing a grievance regarding her actions. Instead, his focus is upon the alleged refusal of other officials at FCI Ray Brook to provide him with necessary forms and co-operate in his efforts to present his grievance against Fortier. Accordingly, Bailey has failed to present any evidence that would support an estoppel against the defendant from raising the issue of exhaustion. *Atkins,* 2012 WL 4026840, at * 3. Therefore, I conclude that Fortier has proven, by a preponderance of the evidence, that she did not, through her own actions, preclude Bailey from taking advantage of the ARP and therefore should not be estopped from asserting the defense.

### 3. *Special Circumstances*

The third, catchall factor that must be considered under the Second Circuit's prescribed exhaustion rubric centers upon whether special circumstances sufficient to justify excusing the plaintiff's failure to exhaust administrative remedies have been demonstrated. *Hemphill,* 380 F.3d at 689; *see also Giano,* 380 F.3d at 676–77; *Hargrove,* 2007 WL 389003, at *10. Among the circumstances potentially qualifying as "special" under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable. *Giano,* 380 F.3d at 676–77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano* ). Special circumstances may also exist when a facility's "[f]ailure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance process unavailable to him." *Murray,* 2010 WL 1235591, at *6 (quoting *Sandlin v. Poole,* 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendant's are estopped from relying on exhaustion defense as 'special circumstances' excusing plaintiff's failure to exhaust")).

**\*8** During the evidentiary hearing, Bailey testified to his awareness of the existence of the ARP at FCI Ray Brook. *See, e.g.,* Tr. 102. Bailey's testimony regarding his alleged efforts to secure the forms necessary to pursue the grievance plainly evidences his knowledge of the requirement that he exhaust available administrative remedies, and negates a finding of any reasonable belief on his part that the dispute in issue was not grievable and could not have been presented through the BOP's internal grievance process. Accordingly, again allocating the ultimate burden of proof on the issue of special circumstances to the defendant, I nonetheless conclude that she has demonstrated, by a preponderance of the evidence, the absence of any special circumstances that would serve to excuse plaintiff's failure to exhaust administrative remedies.

### IV. *SUMMARY AND RECOMMENDATION*

The credible testimony and evidence adduced at the recent hearing, held to address the merits of defendant's exhaustion defense, establishes that (1) Bailey failed to avail himself of the BOP grievance process, which was available to him, before commencing this action; (2) Fortier did not, through her actions, preclude Bailey from filing a grievance regarding the claims set forth in his complaint, or otherwise engage in conduct for which she should be estopped from asserting failure to exhaust as an affirmative defense; and (3) Bailey has offered no special circumstances warranting that he be excused from the PLRA's exhaustion requirement. Accordingly, it is therefore hereby respectfully

RECOMMENDED, that plaintiff's complaint in this action be DISMISSED, based upon his failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

report. Such objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS RE-PORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2012.
Bailey v. Fortier
Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1997 WL 661097 (E.D.Pa.), 11 NDLR P 119
**(Cite as: 1997 WL 661097 (E.D.Pa.))**

H

United States District Court, E.D. Pennsylvania.
Richard L. GREIST, Plaintiff,
v.
NORRISTOWN STATE HOSPITAL, Department of
Public Welfare of the Commonwealth of Pennsylva-
nia, and Chester County Court, Defendants.

No. CIV. A. 96–CV–8495.
Oct. 22, 1997.

*MEMORANDUM OF DECISION*
JOSEPH L. McGLYNN, JR., J.

**\*1** Before the court are two motions: (1) de-
fendant Chester County Court of Common Pleas'
("Chester County Court") motion to dismiss *pro se*
plaintiff's complaint; and (2) defendant Norristown
State Hospital's ("NSH") motion for summary judg-
ment. Because the court does not rely upon the ex-
trinsic exhibits attached to NSH's motion, NSH's mo-
tion for summary judgment will be treated as a motion
to dismiss pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure. For the reasons set forth
below, the court will grant defendants' motions to
dismiss as to all claims and all parties.

I. Background

In 1978, plaintiff Richard L. Greist killed his wife
and their unborn child, and in the same incident,
stabbed his grandmother and removed the eye of his
daughter. *In re Richard Greist,* No. 1437 Philadelphia
1995, slip op. at 1 (Pa.Super.Ct. Apr.26, 1996). After a
1980 bench trial for one count of murder and two
counts of attempted murder, plaintiff was found not
guilty of all charges by reason of insanity. *Id.* On June
18, 1981, the Chester County Court ordered plaintiff
to be involuntarily committed at Norristown State

Hospital for a period not to exceed one year in ac-
cordance with Pennsylvania's Mental Health Proce-
dures Act ("MHPA"), Pa. Stat. Ann. tit. 50, § 7304. *Id.*
As provided by the MHPA, at or about the expiration
of each one year period since 1982, the director of
NSH has petitioned to recommit plaintiff for invol-
untary treatment, and the Chester County Court has
granted all such petitions. *Id.* On August 13, 1996, the
Chester County Court recommitted plaintiff for a
period of 365 days, stating "that Richard Greist poses
a clear and present danger to others, and that Richard
Greist is severely mentally disabled and is in need of
further inpatient treatment." *In re Richard Greist,*
Misc. No. 120 P MT 1978, *Order* at 1 (Chester County
Ct. of Common Pleas Aug. 13, 1996). In making its
ruling, the Chester County Court credited the testi-
mony of plaintiff's staff psychiatrist, Dr. Robert
Bickel, Jr., M.D., who stated that if plaintiff were
subjected to the same stressors as existed on the fatal
evening in 1978, he would likely respond in a similar
manner. *Id.* at 2 n. 1. The Chester County Court also
noted, but rejected, the opinions of two other experts.
*Id.*

On December 23, 1996, plaintiff filed the instant
action and thereafter withdrew his appeal of the re-
commitment order. *In re Richard Greist,* No. 3167
PHL 1996, *Praecipe to Withdraw Appeal*
(Pa.Super.Ct. Jan. 27, 1997).

II. Discussion

Four causes of action are discernable among the
allegations of plaintiff's *pro se* complaint: (1) a claim
under the Americans with Disabilities Act ("ADA"),
42 U.S.C. §§ 12131–134, arising from the Chester
County Court's and NSH's denial of outpatient treat-
ment to plaintiff in alleged violation of the integration
mandate of the ADA; (2) a 42 U.S.C. § 1983 due
process and equal protection claim for release from
involuntary commitment; (3) a 42 U.S.C. § 1983 due

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 661097 (E.D.Pa.), 11 NDLR P 119
**(Cite as: 1997 WL 661097 (E.D.Pa.))**

process and equal protection claim based on NSH's failure to provide plaintiff with training to overcome his dyslexia; and (4) a 42 U.S.C. § 1983 due process claim for denial of access to the courts.

**\*2** Plaintiff asks the court to: (1) declare that defendants' actions violate the ADA and his constitutional and civil rights; (2) grant preliminary and permanent injunctive relief enjoining defendants' illegal actions; (3) order defendants to provide outpatient care services to plaintiff as well as training for his dyslexia; and (4) award him compensatory damages, costs and attorney's fees.

Plaintiff's ADA and § 1983 claims for release from involuntary commitment will be dismissed for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine, and alternatively under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted under both the ADA and 42 U.S.C. § 1983, on the basis of Eleventh Amendment principles of sovereign immunity for the § 1983 claim, and under the doctrine of *Younger* abstention for both the ADA and § 1983 claims. Plaintiff's § 1983 cause of action for training to overcome his dyslexia will be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Lastly, the court will dismiss plaintiff's access to the courts claim as moot.

*A. Rooker–Feldman Doctrine*

The *Rooker–Feldman* doctrine precludes federal action if the relief requested would effectively reverse a state court's decision or void its ruling. *FOCUS v. Allegheny County Ct. of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996). The doctrine applies only when in order to grant the relief sought, a federal court must either determine that a state court's judgment was erroneously entered or must take action that would render that judgment ineffectual. *Id.* A federal court may hear general constitutional challenges to state rules if those claims are not "inextricably intertwined" with claims previously asserted in state court, i.e., the

relief requested in the federal action cannot require a determination "that the state court decision is wrong or would void the state court's ruling." *FOCUS,* 75 F.3d at 840. Accordingly, a complaint which essentially appeals a final state court decision must be dismissed for lack of subject matter jurisdiction. *Kirby v. City of Philadelphia,* 905 F.Supp. 222, 225 (E.D.Pa.1995).

In this instance, plaintiff seeks the same relief in federal court that the Chester County Court denied him in its August 13, 1996 recommitment order, namely his release from involuntary commitment at Norristown State Hospital. He has framed his federal cause of action in terms of § 1983 and title II of the ADA.

Plaintiff's effort to recast ongoing state claims as federal causes of action is precisely what *Rooker–Feldman* prohibits. In the state proceedings, the Chester County Court granted NSH's Petition for Involuntary Treatment and ordered plaintiff's recommitment for a period of 365 days, denying his request for outpatient treatment. *In re Richard Greist,* Misc. No. 120 P MT 1978, *Order* at 1 (Chester County Ct. of Common Pleas Aug. 13, 1996). In this federal action, plaintiff seeks to nullify and indeed reverse the state court's action. Aside from his requests for dyslexia training, damages, attorney's fees and costs, the objective of plaintiff's federal claims is essentially the same as that addressed in his recommitment hearing—release from involuntary inpatient treatment. Thus, the claims asserted by plaintiff in this action are inextricably intertwined with the issues of the state proceeding. The court will accordingly apply *Rooker–Feldman* to dismiss plaintiff's claims for release from involuntary commitment. *See Kirby v. City of Philadelphia,* 905 F.Supp. 222 (E.D.Pa.1995).

*B. Rule 12(b)(6) Dismissal for Failure to State a Claim*

**\*3** Under Rule 12(b)(6)'s failure-to-state-a-claim standard, the court may not dismiss a *pro se* complaint unless it can say with assurance that under the allega-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 661097 (E.D.Pa.), 11 NDLR P 119
**(Cite as: 1997 WL 661097 (E.D.Pa.))**

tions of the complaint, which the court holds to less stringent standards than formal pleadings drafted by lawyers, it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *McDowell v. Delaware State Police,* 88 F.3d 188, 189 (3d Cir.1996).

Both plaintiff and defendant Norristown State Hospital have included various exhibits with their motions, including an affidavit, reports documenting plaintiff's treatment history, and court orders and memoranda relating to plaintiff's involuntary commitment and the prior unsuccessful legal actions aimed at securing his release. In considering this aspect of the claim, the court will not rely upon submissions which fall impermissibly outside the pleadings, such as NSH's exhibit II ("Declaration of Judith O. Yoppi") and the NSH exhibits addressing plaintiff's treatment history. The court will, however, consider the submitted court documents, as they are public records which may be considered in reviewing a Rule 12(b)(6) motion. *See In re Westinghouse Securities Litigation,* 90 F.3d 696, 707 (3d Cir.1996); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 2 (3d Cir.1994)(in review of 12(b)(6) motion, court may consider pleadings, matters of public record, orders, exhibits attached to complaint and items appearing in record of case); *Wallace v. Systems & Computer Technology Corp.,* No. CIV. A. 95–CV–6303, 1996 WL 195382, at *3 n. 4 (E.D.Pa. Apr.19, 1996)(categorizing unpublished Third Circuit opinion as public record which may be considered in Rule 12(b)(6) dismissal).

*1. Americans with Disabilities Act*

Even if plaintiff's action were not barred by *Rooker–Feldman,* plaintiff has failed to state a valid claim under title II of the Americans with Disabilities Act. 42 U.S.C. §§ 12101–134. The thrust of plaintiff's ADA claim is that defendants Chester County Court and Norristown State Hospital have violated plaintiff's rights under the ADA by refusing to treat his mental illness in the most integrated setting possible as re-

quired by 28 C.F.R. § 35.130(d)(1993).[FN1]

> FN1. Plaintiff asserts that "Defendants [sic] willingness to provide inpatient services to Plaintiff Greist in an unnecessarily segregated mental health facility, rather than outpatient care services in his own community, violates the ADA's integration mandate." Pl. Compl. at 9, para. 32.

The ADA prohibits public entities from discriminating against qualified individuals with disabilities in the provision of services, programs, and activities.[FN2] 42 U.S.C.A. § 12132 (West 1997). ADA regulations require public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." *Helen L. v. DiDario,* 46 F.3d 325, 332 (3d Cir.) (quoting 28 C.F.R. § 35.130(d) and noting that the regulation has the force of law), *cert. denied, Pennsylvania Secretary of Public Welfare v. Idell S.,* ——U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995).

> FN2. Qualified individual with a disability is defined as:
>
> > an individual with a disability who, with or without reasonable modification to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.
>
> 42 U.S.C.A. § 12131 (West 1995).

**\*4** Plaintiff fails to state a valid ADA claim on two grounds.

First, the ADA does not require public entities to

Not Reported in F.Supp., 1997 WL 661097 (E.D.Pa.), 11 NDLR P 119
**(Cite as: 1997 WL 661097 (E.D.Pa.))**

make fundamental alterations in their programs.

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, *unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.*

> 28 C.F.R. § 35.130(b)(7)(1997)(emphasis added).

"The test to determine the reasonableness of a modification is whether it alters the essential nature of the program or imposes an undue burden or hardship in light of the overall program." *Easley v. Snider,* 36 F.3d 297, 305 (3d Cir.1994). Congress has stated that administrative or fiscal convenience is no justification for the provision of segregated services under title II of the ADA. *Helen L. v. DiDario,* 46 F.3d 325, 338 (3d Cir.1995)(quoting H.R. Rep. 485(III), 101st Cong.2d. Sess. 50. *reprinted in* 1990 U.S.C.C.A.N at 473). In this case, however, the Chester County Court recommitted plaintiff for inpatient treatment because of the "clear and present danger" he presents to others should he be released. *In re Richard Greist,* Misc. No. 120 P MT 1978, *Order* at 1 (Chester County Ct. of Common Pleas Aug. 13, 1996). One purpose of the MHPA is to protect the public from dangerous, mentally ill persons. Pa. Stat. Ann. tit. 50, § 7102 (1969 & Supp.1997) ( "The provisions of this act shall be interpreted in conformity with the principles of due process to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others."); *see also Commonwealth v. Helms,* 352 Pa.Super. 65, 506 A.2d 1384, 1389 (Pa.Super.Ct.1986)("The state must confine a mentally ill person who is dangerous to others in order to protect the welfare of the community."). To require state courts to release such individuals into the community would fundamentally alter the nature of Pennsylvania's involuntary commitment program by

making an essential purpose of the program—protecting the community—impossible to accomplish. As a consequence, plaintiff's assertion that the ADA requires defendants to release him for outpatient services must be rejected.[FN3]

> FN3. Moreover, the Third Circuit has stated that the ADA does not mandate the *per se* deinstitutionalization of the disabled. *See Helen L. v. DiDario,* 46 F.3d 325, 336 (3d Cir.1995)(citing *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 24, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), for the proposition that the ADA does not require "community care" or "deinstitutionalization"); *accord Conner v. Branstad,* 839 F.Supp. 1346, 1357 (S.D.Iowa 1993)(concluding that "the ADA does not require deinstitutionalization of mentally disabled individuals").

Second, plaintiff fails to show that he was wrongly discriminated against by reason of his mental illness. In *Jeffrey v. St. Clair,* the plaintiffs, involuntarily committed hospital patients who were acquitted of various criminal charges in Hawaii state courts, sought a preliminary injunction after their residential program was closed and they were transferred to a more restrictive setting. 933 F.Supp. 963, 966, 969 (D.Hawai'i 1996). The plaintiffs based their ADA claim on 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(d), alleging that they were not being treated in the most integrated setting appropriate to their needs. *Id.* at 969. But the court denied the plaintiffs' request for a preliminary injunction, reasoning that they did not allege discrimination based on their mental disability, but only that they were not being sufficiently credited for progress in overcoming their respective illnesses. *Id.* at 970. "As such, the Plaintiffs fail[ed] to carry their burden of proof in showing that they were discriminated against on the basis of their 'disability.' " *Id.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 661097 (E.D.Pa.), 11 NDLR P 119
**(Cite as: 1997 WL 661097 (E.D.Pa.))**

**\*5** The reasoning in *Jeffrey* applies equally to plaintiff's complaint. Plaintiff asserts that the Chester County Court refuses to countenance the recommendations of his "treating psychiatrists, psychologists, and case workers [in violation of] the integration mandate of the Americans with Disabilities Act." Pl. Compl. at 4, para. 15(a). He is not challenging an arbitrary and discriminatory denial of services for which he is indisputably qualified. *See, e.g., Helen L. v. DiDario,* 46 F.3d 325 (3d Cir.1995)(finding that plaintiff whose qualification for outpatient treatment was undisputed was improperly excluded for budgetary reasons). Rather, plaintiff challenges the Chester County Court's finding that he is unqualified for outpatient services because of the "clear and present danger" he poses to others because of his mental illness. *In re Richard Greist,* Misc. No. 120 P MT 1978, *Order* at 1 (Chester County Ct. of Common Pleas Aug. 13, 1996). This is not a case of discrimination against a subgroup of persons within the class of qualified mentally disabled persons. To the contrary, this is a case where plaintiff's dangerousness belies his assertion that he is qualified for participation in an outpatient treatment program.

ADA regulations permit necessary eligibility limitations on participation in public programs.[FN4] The appendix to the ADA's eligibility regulation states that public entities may utilize neutral rules that screen out individuals with disabilities "if the criteria are necessary for the safe operation of the program." 28 C.F.R. pt. 35, App. A, at 461 (1995); *see, e.g. Doe v. Judicial Nominating Comm'n for the Fifteenth Judicial Cir. of Fla.,* 906 F.Supp. 1534, 1540–41 (S.D.Fla.1995)(in order to protect the public, ADA "necessity exception" applies to judicial selection process to allow reasonable, narrowly drawn eligibility criteria which screen out, or tend to screen out individuals with disability). These regulations are due substantial deference by the court. *Helen L.,* 46 F.3d at 331 (stating that regulations promulgated under title II of the ADA are entitled to substantial deference).

FN4. The relevant regulation states that

[a] public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity *unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.*

28 C.F.R. § 35.130(b)(8) (1997)(emphasis added).

In the Third Circuit, a court must investigate two things in determining whether a program wrongly discriminates under the ADA: "(1) whether the plaintiff meets the program's stated requirements in spite of his/her handicap, and (2) whether a reasonable accommodation could allow the handicapped person to receive the program's essential benefits." *Easley v. Snider,* 36 F.3d 297, 302 (3d Cir.1994). Pennsylvania's Mental Health Procedures Act makes insanity acquittees who pose "a clear and present danger to others" and are in need of further treatment ineligible for release from involuntary commitment. Pa. Stat. Ann. tit. 50, §§ 7301(a) & 7304(g)(4). The Chester County Court has already determined that plaintiff does not meet the stated requirement for release (i.e., non-dangerousness).[FN5] Further, it is difficult to conceive of an accommodation by which highly dangerous insanity acquittees could be adequately supervised to prevent harm to others on an outpatient basis. Accordingly, plaintiff is unqualified under the ADA and MHPA to participate in outpatient treatment pursuant to 28 C.F.R. § 35.130(b)(8) and Pa. Stat. Ann. tit. 50, § 7304.

FN5. As noted by NSH in its brief, Def. NSH Mot. for Summ. Judg. at 3, the issue of plaintiff's dangerousness has already been

determined by the state court, and plaintiff may not relitigate it here. *O'Shea v. Amoco Oil Co.,* 886 F.2d 584, 591 (3d Cir.1989)(federal courts must give the same preclusive effect to state court judgments as those judgments would be given in the courts of the state from which the judgment originated).

**\*6** For the above-mentioned reasons, the court alternatively dismisses plaintiff's ADA complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

*2. 42 U.S.C. § 1983*

Plaintiff also fails to state valid claims for release from involuntary commitment and dyslexia training under 42 U.S.C. § 1983.

Defendants contend that, insofar as plaintiff seeks his release from involuntary commitment, plaintiff's § 1983 complaint is in fact a claim for *habeas corpus.* Def. Chester County Court's Mot. to Dis. at 8; Def. NSH's Mot. for Summ. Judg. at 5–6. The court agrees.

In *Preiser v. Rodriguez,* the Supreme Court held that "Congress has determined that habeas corpus [28 U.S.C. § 2254] is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." 411 U.S. 475, 490, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The same analysis applies to those involuntarily committed in state mental institutions as well as to criminal prisoners. *See Buthy v. Commissioner of the Office of Mental Health of New York State,* 818 F.2d 1046, 1051–52 (2d Cir.1987)(insanity acquittee could only challenge the fact of confinement by petitioning for writ of *habeas corpus* ); *Davis v. Hill,* No. 86 C 4592, 1986 WL 355, at \*2 (N.D.Ill. July 16, 1986)(*Preiser* analysis "applies to confinement in a state mental hospital as well as a state prison, since both cases

involve detention in state custody where habeas corpus is the proper vehicle for release"); *see also Souder v. McGuire,* 516 F.2d 820, 823 (3d Cir.1975)( "There is no question about the appropriateness of habeas corpus as a method of challenging involuntary commitment to a mental institution."). As a result, plaintiff cannot challenge the fact or duration of his involuntary commitment through § 1983. The appropriate vehicle for that claim is *habeas corpus,* for which plaintiff must first exhaust his state remedies before proceeding to federal court.[FN6]

FN6. The federal *habeas corpus* statute requires that state prisoners first seek redress in a state forum, *see Rose v. Lundy,* 455 U.S. 509, 515–22, 102 S.Ct. 1198, 71 L.Ed.2d 379(1982); 28 U.S.C.A. § 2254(b) (West 1997); *see also Paulet v. Howard,* 634 F.2d 117, 119 (3d Cir.1980)(exhaustion of state remedies requires presentation to state court of facts and legal basis of claim), a requirement which also applies to petitioners who challenge their confinement to state mental hospitals. *Strowder v. Shovlin,* 272 F.Supp. 271, 273 (M.D.Pa.1966), *aff'd,* 380 F.2d 370 (3d Cir.1967).

Plaintiff also argues that NSH's refusal to provide training to overcome his dyslexia violates the ADA and his due process, equal protection, and civil rights. Pl. Compl. at 6, para. 16(b). In a § 1983 action, two elements must be established: 1) the conduct in question must be committed by a person acting "under color of state law"; and 2) the conduct must deprive a person of rights privileges or immunities secured by the Constitution or laws of the United States. *Holt Cargo Systems v. Delaware River Port Authority,* No. CIV. A. 94–7778, 1996 WL 195390, at \* 3 (E.D.Pa. Apr.19, 1996)(citing *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3d Cir.1995)). Analysis of a § 1983 claim therefore begins with identification of the specific federal right allegedly infringed. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104

Not Reported in F.Supp., 1997 WL 661097 (E.D.Pa.), 11 NDLR P 119
**(Cite as: 1997 WL 661097 (E.D.Pa.))**

L.Ed.2d 443 (1989); *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Here, plaintiff does not allege the violation of any right protected under federal law.

**\*7** While the ADA does require public entities to make "reasonable accommodations" to ensure that disabled persons are not denied access to the services provided by a particular public entity, nothing in the ADA requires those entities to expand the scope of their activities to provide services for the disabled which are not provided at all by such entities. *See National Coalition for Students with Disabilities Education and Legal Defense Fund v. Allen,* 961 F.Supp. 129, 131 (E.D.Va.1997)(citing *Smith v. Department of Rehabilitation & Correction,* 104 Ohio App.3d 210, 661 N.E.2d 771 (1995)). Plaintiff does not aver that NSH provides any training for dyslexia, and the ADA does not require NSH to provide such training if NSH does not provide it in the first place. Additionally, plaintiff does not contend that he is being discriminated against by reason of his dyslexia, a vital component of any ADA claim. *See Kornblau v. Dade County,* 86 F.3d 193, 194 (11th Cir.1996)(to prove ADA violation, plaintiff must show disability, denial of public benefit, and that denial was by reason of plaintiff's disability); *CERPAC v. Health and Hospitals Corp.,* 920 F.Supp. 488, 497 (S.D.N.Y.1996); *Civic Ass'n of Deaf of New York City, Inc. v. Giuliani,* 915 F.Supp. 622, 634 (S.D.N.Y.1996). As a consequence, plaintiff has not stated an actionable claim for dyslexia training under the ADA.

Plaintiff also provides no legal support for his due process and equal protection claims. There is no authority for the proposition that mental patients have a substantive due process right to training for learning disorders such as dyslexia. In fact, the opposite may be true. Although the involuntarily civilly committed are due a higher standard of care than "criminals whose conditions of confinement are designed to punish," the Fourteenth Amendment's due process clause only requires states to provide involuntarily-committed

mental patients with "minimally adequate or reasonable training to ensure safety, freedom from bodily restraint, and minimally adequate or reasonable training to further the ends of safety and freedom from restraint." [FN7] *Youngberg v. Romeo,* 457 U.S. 307, 319, 322, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); *Dolihite v. Maughon,* 74 F.3d 1027, 1041 (11th Cir.1996). Plaintiff has not alleged any lack of safety or freedom from bodily restraint, and thus has not stated a cognizable due process claim.

> FN7. Other categories of persons in state custody possess no greater rights. For example, while involuntarily-institutionalized mentally retarded persons have a right to necessary psychiatric care, *United States v. Commonwealth of Pa.,* 902 F.Supp. 565, 598 (W.D.Pa.1995), the failure to provide training that improves their basic care skills, absent proof that the lack of training results in the loss of a recognized liberty interest, has been found not to implicate constitutional due process concerns. *United States v. Commonwealth of Pa.,* 902 F.Supp. 565, 617–18 (W.D.Pa.1995). Furthermore, the failure to provide educational programs to prison inmates is generally not considered a constitutional deprivation. *Newman v. State of Ala.,* 559 F.2d 283, 292 (5th Cir., 1977); *Burnette v. Phelps,* 621 F.Supp. 1157, 1159 (D.La.1985)(stating that "there is no federal constitutional right to participate in a prison education program"); *Russel v. Oliver,* 392 F.Supp. 470, 474 (W.D.Va.1975)("no federal constitutional right to vocational training exists for inmates in a correctional system"), *aff'd in part, vacated in part on other grounds,* 552 F.2d 115 (4th Cir.1977); *Hayes v. Cutler,* 475 F.Supp. 1347, 1350 (E.D.Pa.1979)(noting that "prison officials have no duty to provide a barbering school," that most jurisdictions find no Eighth Amendment right to attend vocational

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 661097 (E.D.Pa.), 11 NDLR P 119
**(Cite as: 1997 WL 661097 (E.D.Pa.))**

school, and that rehabilitation opportunities are not a constitutional right).

In addition, plaintiff makes no allegations of discriminatory treatment in NSH's refusal to provide him with training for his dyslexia. "The essence of the equal protection clause is a requirement that similarly situated persons be treated alike." *Huffaker v. Bucks County District Attorney's Office,* 758 F.Supp. 287, 291 (E.D.Pa.1991)(citing *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)); *Mahone v. Addics Utility Dist. of Harris County,* 836 F.2d 921, 932 (5th Cir.1988); *Gobla v. Crestwood School District,* 609 F.Supp. 972, 978 (M.D.Pa.1985). Plaintiff, however, does not contend that defendants treated him differently from others similarly situated. Without discriminatory treatment, there can be no violation of equal protection.

**\*8** In short, NSH's denial of training for plaintiff's dyslexia is not an injury of constitutional proportions. Plaintiff's equal protection and due process claims for dyslexia training are appropriately dismissed pursuant to Rule 12(b)(6).

### C. Eleventh Amendment

Plaintiff's § 1983 claims are also barred by the Eleventh Amendment. Absent congressional abrogation of state sovereign immunity or a state's consent, the Eleventh Amendment bars suits in federal court in which a state is a defendant. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Laskaris v. Thornburgh,* 661 F.2d 23, 26 (3d Cir.1981), *cert. denied,* 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984). This jurisdictional bar applies regardless of the type of relief sought, *Pennhurst,* 465 U.S. at 100–01, and extends to suits against departments having no existence apart from the state. *See Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The defendants named in the complaint include Norristown State Hospital, the Pennsylvania Department of Public Welfare, and the Chester County Court of Common Pleas. All three entities are considered arms of the Commonwealth of Pennsylvania and are entitled to immunity from suit under the Eleventh Amendment. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)(state agencies are entitled to Eleventh Amendment immunity); *Temple Univ. v. White,* 941 F.2d 201, 214 (3d Cir.1991)(barring legal remedies against Pennsylvania's Department of Public Welfare on Eleventh Amendment grounds); *Murray v. Norristown State Hospital,* CIV. A. No. 89–1478, 1989 WL 36966, at \*1 (E.D.Pa. Apr.17, 1989) (holding that Norristown State Hospital, as an arm of the Department of Public Welfare, is entitled to Eleventh Amendment immunity); *Reiff v. Philadelphia County Court of Common Pleas,* 827 F.Supp. 319, 323–24 (E.D.Pa.1993)(concluding that the Court of Common Pleas of Philadelphia County is an arm of the state and therefore possesses Eleventh Amendment immunity to suit)(citing *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)); *see also Landers Seed Co. v. Champaign Nat'l Bank,* 15 F.3d 729, 731–32 (7th Cir.) (holding that Eleventh Amendment bars federal suits against state courts), *cert. denied,* 513 U.S. 811, 115 S.Ct. 62, 130 L.Ed.2d 20 (1994). In addition, Pennsylvania has expressly withheld its consent to be sued in federal court. Pa. Stat. Ann. tit. 42, § 8521(b) (1996).

**\*9** Plaintiff argues that because Chester County funds the Chester County Court of Common Pleas, Chester County, not Pennsylvania, is the real, substantial party in interest. Pl. Resp. to NSH's Mot. for Summ. Judg. at 5. Plaintiff is incorrect. Regardless of their source of funding, Pennsylvania's courts of common pleas are arms of the state and entitled to Eleventh Amendment immunity. *See Robinson v. Court of Common Pleas of Philadelphia County,* 827 F.Supp. 1210, 1216 (E.D.Pa.1993)(holding that, not-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 661097 (E.D.Pa.), 11 NDLR P 119
**(Cite as: 1997 WL 661097 (E.D.Pa.))**

withstanding their source of funding, Pennsylvania's courts of common pleas are arms of the state and enjoy Eleventh Amendment immunity); *Reiff v. Philadelphia County Court of Common Pleas,* 827 F.Supp. 319, 322–23 (E.D.Pa.1993).

Therefore, even if plaintiff had stated a valid § 1983 claim, all named defendants are immune to suit in federal court for injunctive, declaratory and monetary relief under the Eleventh Amendment.

### D. Younger Abstention

The Chester County Court also argues that this court should abstain from exercising jurisdiction over plaintiff's claims pursuant to *Younger v. Harris,* 401 U.S. 37 (1971). Three criteria must be satisfied before *Younger* abstention is appropriate: (1) there must be an ongoing state judicial proceeding to which the federal plaintiff is a party and with which the federal proceeding will interfere; (2) the state proceeding must implicate important state interests; and (3) the state proceeding must afford an adequate opportunity to raise federal claims. *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 843 (3d Cir.1996); *Olde Discount Corp. v. Tupman,* 1 F.3d 202, 211 (3d Cir.1993). All three requirements are met in this case.

First, the initial order of involuntary commitment and subsequent annual review of plaintiff's status by the Chester County Court pursuant to Pennsylvania's Mental Health Procedures Act, Pa. Stat. Ann. tit. 50, § 7304(g)(2)—(4)(1969 & Supp.1997) [FN8], constitute an ongoing state judicial proceeding to which the plaintiff is a party. Pennsylvania law permits the involuntary commitment for up to one year of persons who are found not guilty of murder by reason of insanity. Pa. Stat. Ann. tit. 50, § 7304(g)(2)(1969 & Supp.1997). These persons may not be released during that period without court permission, Pa. Stat. Ann. tit. 50, § 7304(g)(3)(1969 & Supp.1997), nor may they be released at the expiration of their one-year commitment without court approval. Pa. Stat. Ann. tit. 50, §

7304(g)(4)(1969 & Supp.1997). At the end of the one-year time period, the court may order further involuntary commitment. *Id.* Given the continuous nature of the proceedings authorized by the MHPA, the Chester County Court's involvement in plaintiff's involuntary commitment may properly be regarded as an "ongoing judicial proceeding." *See Nelson v. Murphy,* 44 F.3d 497, 501 (7th Cir.1995)(finding that the Illinois court's supervision of confined persons found not guilty by reason of insanity constituted "continuations of the original criminal prosecutions" for purposes of *Younger* ).

> FN8. The MHPA provides for the court-ordered involuntary commitment of a person for up to one year where the person's severe mental disability gave rise to murder or other serious crimes, and that person was found incompetent to stand trial or not guilty by reason of insanity. 50 Pa. Stat. Ann. § 7304(g)(2) (1969 & Supp.1997). Section 7304(g)(4) requires that, for persons committed under § 7304(g)(2), when the period of court-ordered involuntary commitment is about to expire and neither the director of the mental health institution nor the county administrator intends to apply for an additional period of involuntary treatment, or if the director at any time concludes the person is no longer severely mentally disabled or no longer requires treatment, the director file a petition with the court for the conditional or unconditional release of the person.

**\*10** Second, plaintiff's involuntary commitment proceedings implicate important state interests. As defendant Chester County Court noted in its brief, Pennsylvania court decisions regarding involuntary commitments are entirely controlled by state law. *See* Pa. Stat. Ann. tit. 50, §§ 7301—05 (1969 & Supp.1997). Moreover, the purpose of the Mental Health Procedures Act containing those provisions is to "further the policy of the Commonwealth of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 661097 (E.D.Pa.), 11 NDLR P 119
**(Cite as: 1997 WL 661097 (E.D.Pa.))**

Pennsylvania 'to seek to assure the availability of adequate treatment to persons who are mentally ill.' " *Hahnemann Univ. Hosp. v. Edgar,* 74 F.3d 456, 463 (3d Cir.1996)(quoting Pa. Stat. Ann. tit. 50, § 7102). The Third Circuit has recognized the primacy of state law in this area, stating that "it is not the place of this court to create judicial exceptions to a Pennsylvania statute that has been strictly construed by the state's courts." *Id.* at 464. As a consequence, the second requirement of *Younger*—that the state proceeding at issue implicate important state interests—is satisfied.

Lastly, the Chester County Court's involuntary commitment proceedings offered plaintiff an adequate opportunity to raise his federal claims. The MHPA expressly states that persons in treatment are entitled to all the rights provided under Pennsylvania law. Pa. Stat. Ann. tit. 50, § 7113 (1969 & Supp.1997). The Act further provides that

[a]ctions requesting damages, declaratory judgment, injunctions, mandamus, writs of prohibition, habeas corpus, including challenges to the legality of detention or degree of restraint, and any other remedies or relief granted by law may be maintained in order to protect and effectuate the rights granted under this act.

*Id.*

Indeed, Pennsylvania courts have noted that "the structure of the Act evidences a legislative intent to create a treatment scheme under which the patient's procedural protections expand progressively as the deprivation of his liberty gradually increases." *Commonwealth v. C.B.,* 307 Pa.Super. 176, 452 A.2d 1372, 1374 (Pa.Super.1982). In Pennsylvania, involuntary civil commitment is only possible "in accordance with due process standards." *Id.*

Furthermore, Pennsylvania courts have concurrent jurisdiction with federal courts to hear § 1983

claims [FN9] and ADA claims.[FN10] Thus, plaintiff could have pursued the claims comprising the subject matter of this action in his state court involuntary commitment proceedings. *See Commonwealth v. Helms,* 352 Pa.Super. 65, 506 A.2d 1384, 1387 (1986)(common pleas court judges have jurisdiction under Mental Health Procedures Act to initiate as well as review legal proceedings relating to commitment). It is immaterial whether plaintiff in fact raised those claims with the Chester County Court, as *Younger* abstention does not require that litigants have actually presented their federal claims to the state tribunal. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 15–17, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Guarino v. Larsen,* 11 F.3d 1151, 1161 n. 7 (3d Cir.1993)(citing *Pennzoil* for the proposition that "where a litigant has been summoned to participate in a state court proceeding ... [the] litigant must present all of his or her claims arising from the same transaction in order to avoid waiving those claims he or she does not raise."). In any case, plaintiff does not allege that the Chester County Court refused to entertain his federal claims. To the contrary, after his hearing before the Chester County Court, plaintiff decided to forego his additional state court remedies, voluntarily withdrawing his Superior Court appeal of the Chester County Court's recommitment order. *In re Richard Greist,* No. 3167 PHL 1996, *Praecipe to Withdraw Appeal* (Pa.Super.Ct. Jan. 27, 1997). Neither the pleadings nor the Chester County Court's recommitment order indicate whether plaintiff presented his federal claims to the Chester County Court. This is immaterial. If plaintiff in fact presented those claims, *Younger* will still not allow him to "procure federal intervention by terminating the state judicial process prematurely—foregoing the state appeal to attack the trial court's judgment in federal court." *New Orleans Publ. Serv., Inc. v. Council of City of New Orleans.* 491 U.S. 350, 369, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). This court cannot consider plaintiff's federal claims if the proper forum for their review is the Pennsylvania Superior Court.[FN11] Accordingly, the third requirement of *Younger,* availability of a state tribunal to address his federal claims,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 661097 (E.D.Pa.), 11 NDLR P 119
**(Cite as: 1997 WL 661097 (E.D.Pa.))**

has been met.

> FN9. *Bennett v. White,* 865 F.2d 1395, 1406 (3d Cir.), *reh'g denied, cert. denied,* 492 U.S. 920, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989).

> FN10. *Jones v. Illinois Cent. R. C.,* 859 F.Supp. 1144, 1145 (N.D.Ill.1994).

> FN11. Although issues not raised in the lower court are waived and cannot be raised for the first time on appeal in a matter involving civil commitment. *In re Wilson,* 303 Pa.Super. 326, 449 A.2d 711, 711 (Pa.Super.Ct.1982).

**\*11** As alternative grounds for dismissal of plaintiff's claim for release from involuntary commitment, the court may thus abstain from exercising its jurisdiction over plaintiff's federal causes of action.

*E. Access to the Courts*

The United States Constitution guarantees convicted offenders the right to meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817, 820, 823, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Persons who are involuntarily confined to mental institutions also possess this right. *Ward v. Cort,* 762 F.2d 856, 858 (10th Cir.1985); *Murray v. Didario,* 762 F.Supp. 109, 109 (E.D.Pa.1991). In *Bounds v. Smith,* the Supreme Court held that the state must provide detainees with either adequate law library facilities or adequate assistance from persons trained in the law. 430 U.S. at 823. In any case, " '[m]eaningful access' to the courts is the touchstone." *Id.*

Plaintiff did not have access to a law library for the preparation of his complaint. Pl. Compl. at 8, para. 29. Since then, however, "when plaintiff has requested to leave the grounds of NSH and be escorted to a law library in the Philadelphia area, defendant NSH has

generally complied with his requests." Def. NSH's Mot. to Dis. at 7. Plaintiff acknowledges this access in his responsive pleading. Pl's. Resp. to Def. NSH's Mot. for Summ. Judg. at 8. Plaintiff still complains, however, that library access is only available at his continued insistence and at NSH's convenience, "notwithstanding the time requirements of the case before the District Court, nor the additional time necessary for the Plaintiff to research the pertinent law(s) due to his various disabilities." *Id.* at 8–9. Implicit in his response is the admission that he has suffered no injury as a result of NSH's past limitations on his law library access.[FN12] *Id.* at 8.

> FN12. Plaintiff argues, "[d]id Defendant's actions cause injury? It is not a question of injury ... it is a question of depravation [sic] of Constitutional Rights. Depravation [sic] of the Constitutional Rights of any Citizen is an injury in and of itself." Pl's. Resp. to Def. NSH's Mot. for Summ. Judg. at 8. This argument is in error, as "actual injury" must be shown to make out an access to the courts claim. *Lewis v. Casey,* 518 U.S. 343, ——, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996).

"Adequate" access is all the law requires under *Bounds,* 430 U.S. at 823. In the Third Circuit, the standard in applying a prisoner's constitutional right of access to the courts is whether the legal resources available to the prisoner will enable him to identify the legal issues that he desires to present to the relevant authorities, including the courts, and to make communications with and presentations to those authorities understood. *Abdul–Akbar v. Watson,* 4 F.3d 195, 203 (3d Cir.1993). Plaintiff's assertions of inconvenience do not amount to inadequate access in light of the fruit of his legal labors[FN13] and NSH's accommodation of his requests for law library access. Because NSH now provides plaintiff with adequate access to law library facilities, plaintiff's claim that he has been denied access to the courts by Norristown

Not Reported in F.Supp., 1997 WL 661097 (E.D.Pa.), 11 NDLR P 119
**(Cite as: 1997 WL 661097 (E.D.Pa.))**

State Hospital is dismissed as moot.

> FN13. Plaintiff has produced: a *pro se* com-
> plaint making the court aware of his ADA
> and § 1983 claims; an application to proceed
> *in forma pauperis;* a discovery request; a
> motion for default; and responses to both the
> Chester County Court's motion to dismiss
> and NSH's motion for summary judgment.

III. Conclusion

**\*12** In consideration of the foregoing, defendants'
motions to dismiss are GRANTED.

*ORDER*

AND NOW, this day of October, 1997, upon
consideration of the Motions to Dismiss by defendant
Chester County Court of Common Pleas and defend-
ant Norristown State Hospital, Department of Public
Welfare of the Commonwealth of Pennsylvania, and
plaintiff Richard L. Greist's responses thereto, it is
hereby

ORDERED that defendants' motions to dismiss
are GRANTED and plaintiff's complaint is DIS-
MISSED as to all claims and all parties.

E.D.Pa.,1997.
Greist v. Norristown State Hosp.
Not Reported in F.Supp., 1997 WL 661097 (E.D.Pa.),
11 NDLR P 119

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 710605 (S.D.N.Y.)
**(Cite as: 2011 WL 710605 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Marvin Arnold POLLACK, Petitioner,
v.
David A. PATERSON, et al., Respondents.

No. 10 Civ. 6297(JGK)(JLC).
March 1, 2011.

*REPORT AND RECOMMENDATION*
JAMES L. COTT, United States Magistrate Judge.
**\*1 To the Honorable John G. Koeltl, United States District Judge:**

*Pro se* Petitioner Marvin Arnold Pollack ("Pollack" or "Petitioner") seeks a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, challenging his involuntary retention at the Mid–Hudson Forensic Psychiatric Center ("Mid–Hudson") in New Hampton, New York, where he is currently committed. Pollack challenges applications made by the Clinical Director of Mid–Hudson for his continued retention in various ongoing state court proceedings. For the following reasons, I recommend that Pollack's Amended Petition (Dkt. No. 24) be dismissed without prejudice for failure to exhaust state remedies.

## I. BACKGROUND
**A. New York's Statutory Scheme for Civil Commitment**

In New York, the defense of not responsible by reason of mental disease or defect ("NRRMDD") is sometimes available to a criminal defendant. *Richard S. v. Carpinello,* 589 F.3d 75, 77 (2d Cir.2009);

N.Y.Crim. Proc. Law (hereafter "CPL") § 220.15 (McKinney 2010). Pursuant to CPL § 330.20, after a verdict or plea of NRRMDD, qualified psychiatrists must examine the acquittee to determine the existence of mental illness or a dangerous mental disorder and submit their reports to the court. *Richard S.,* 589 F.3d at 77; N.Y. Ct. Rules § 110.3. The court must then hold an initial hearing to determine whether the acquittee is mentally ill. *Richard S.,* 589 F.3d at 77; N.Y. Ct. Rules § 110.4. If the defendant is found neither to be mentally ill nor to have a dangerous mental disorder, a court should discharge the defendant, either unconditionally or subject to an order of conditions. *Richard S.,* 589 F.3d at 77; N.Y. Ct. Rules § 110.4(c). However, if a court finds the defendant to be mentally ill but without a dangerous mental disorder, it must order civil commitment and an order of conditions. *Richard S.,* 589 F.3d at 77; N.Y. Ct. Rules § 110.4(b). Finally, if a court determines that the acquittee has a dangerous mental disorder, it must order the acquittee to be committed to a secure psychiatric facility for an initial term of six months. *Richard S.,* 589 F.3d at 77; N.Y. Ct. Rules § 110.4(a).

When an individual has been committed to a secure facility, the Commissioner of Mental Health (the "Commissioner") must file for a first retention order within 30 days prior to the expiration of the commitment order. *Richard S.,* 589 F.3d at 77–78; N.Y. Ct. Rules § 110.5. Similarly, within 30 days before the expiration of the first retention order, the Commissioner must file for a second retention order, and all subsequent retention orders must be filed within the 30 days before the expiration of the previous one. CPL § 330.20(9); N.Y. Ct. Rules § 110.8–9. If demand is made by a party, a court must conduct a hearing to determine if the defendant continues to have a dangerous mental condition. CPL § 330.20(8)-(9); N.Y. Ct. Rules § 110.8–9. If the court determines that the individual is no longer mentally ill, it must issue a

Not Reported in F.Supp.2d, 2011 WL 710605 (S.D.N.Y.)
**(Cite as: 2011 WL 710605 (S.D.N.Y.))**

release order and an order of conditions; if the court finds the individual to be mentally ill but without a dangerous disorder, it must issue a first retention order, a transfer order to civil commitment, and an order of conditions. CPL § 330.20(8)-(9); N.Y. Ct. Rules § 110.8–9.

**\*2** At any point during the period covered by the order of conditions, the district attorney or the Commissioner can make an application for a recommitment order "when the applicant is of the view that the defendant has a dangerous mental disorder." CPL § 330.20(14); N.Y. Ct. Rules § 110.12. Such an application must be followed by a hearing, and if a court finds the defendant to have a dangerous mental condition, it must issue an order recommitting the acquittee to a secure psychiatric center. *Id.*

An "acquittee may appeal by permission a commitment order, retention order or recommitment order to an intermediate state appellate court, and may appeal by permission a final decision to the Court of Appeals." *Richard S.,* 589 F.3d at 78 (citing CPL § 330.20(21)).

**B. Pollack's Commitment History**

In 1993, Pollack was charged with attempted murder for stabbing his wife and pleaded not responsible by reason of mental disease or defect under CPL § 220.15. Declaration of Lisa Ellen Fleischmann in Support of Respondents' Motion to Dismiss the Habeas Petition, dated October 19, 2010 ("Resp't Decl.") ¶ 2 (Dkt. No. 13). Pollack was committed to the custody of the Commissioner in May 1995 but on April 11, 2000, received an order of transfer to a non-secure facility along with an order of conditions pursuant to CPL § 330.20(11). Petition for Writ of Habeas Corpus, dated May 18, 2010 at 94Q (Dkt. No. 2). He subsequently received inpatient and outpatient psychiatric treatment and was discharged to the community in December 2003 with an order of conditions. Resp't Decl. ¶ 2 (Dkt. No. 13); Pet. at 94J, 94Q (Dkt. No. 2).

In 2005, an application was made pursuant to CPL § 330.20(14) to recommit Pollack after he violated the order of conditions by contacting his former wife.[FN1] Amended Petition for Writ of Habeas Corpus, dated October 14, 2010 ("Am.Pet.") at 5–6 (Dkt. No. 24). Pollack was detained at Mid–Hudson, and it was determined that he had a dangerous mental condition. Resp't. Decl. ¶ 2 (Dkt. No. 13). Pollack continues to be detained at Mid–Hudson. *Id.*

> FN1. Pollack and his wife divorced in 1999. Pet. at 110 n. 10 (Dkt. No. 2); *see also Susan Pollack v. Marvin Pollack,* 290 A.D.2d 547, 547–48, 736 N.Y.S.2d 628, 628 (2d Dept.2002) (affirming grant of divorce on the ground of cruel and inhuman treatment).

**C. State Court Proceedings**

In September 2006, the Clinical Director of Mid–Hudson applied for a first retention order to extend Pollack's commitment pursuant to CPL § 330.20(8) in State Supreme Court, Orange County (the "trial court" or "state court"). Resp't Decl. ¶ 3, Ex. A (Dkt. No. 13). Pollack moved to represent himself in the proceeding, but the trial court, by order dated December 21, 2006, denied his request. Resp't Decl. ¶ 3 (Dkt. No. 13); *see also In re Marvin P.,* 858 N.Y.S.2d 904, 52 A.D.3d 722 (2d Dept.2008). Pollack appealed the court's ruling, and the Appellate Division, Second Department (the "Appellate Division") dismissed his appeal in June 2008, concluding that "no appeal lies as of right or by permission from an interlocutory order in a CPL 330.20 proceeding." *Marvin P.,* 858 N.Y.S.2d at 904, 52 A.D.3d at 722. The Appellate Division also noted that though the trial court did not question Pollack before denying his motion to proceed *pro se,* the record provided "a reliable basis [for the court] to conclude that [Pollack] could not knowingly and intelligently waive his right to counsel." *Id.* (citation omitted). The retention proceeding is still pending. Resp't Decl. ¶ 4 (Dkt. No. 13); Am. Pet. at 6 (Dkt. No. 24); Letter to the Hon-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 710605 (S.D.N.Y.)
**(Cite as: 2011 WL 710605 (S.D.N.Y.))**

orable John G. Koeltl and the Honorable James L. Cott, dated Nov. 26, 2010 ("Pet'r's Nov. 26 Letter") at 8.

**\*3** While the application for the first order of retention was still pending, in August 2007 the Clinical Director of Mid–Hudson applied in state court for a second order of retention pursuant to CPL § 330 .20(9). Resp't's Decl. ¶ 5 & Ex. B (Dkt No. 13). Again Pollack moved to represent himself in the proceeding and also sought the appointment of standby counsel. *Id.* In December 2008, the trial court denied the motion, reasoning that Pollack did not understand the gravity of the proceedings. *Id.* ¶ 5 & Ex. C. Pollack appealed the ruling, and the Appellate Division again dismissed the appeal on the grounds that an interlocutory order issued in a retention proceeding may not be appealed pursuant to CPL § 330.20(21). *Id.* ¶ 6. Pollack brought a second appeal, which the Appellate Division dismissed on April 23, 2010, and then sought leave to appeal to the New York Court of Appeals. *Id.* The Court of Appeals denied Pollack's motion for leave to appeal on April 29, 2010, concluding that "the order sought to be appealed from does not finally determine the proceeding within the meaning of the Constitution." Resp't's Decl. ¶ 6 (Dkt. No. 13); *In re Marvin Pollack,* 14 N.Y.3d 836, 836, 900 N.Y.S.2d 728, 728 (2010). The second retention proceeding is currently pending. Resp't's Decl. ¶ 8 (Dkt. No. 13); Am. Pet. at 6 (Dkt. No. 24); Pet'r's Nov. 26 Letter at 8.

Meanwhile, in July 2009 the Clinical Director of Mid–Hudson applied for a third order of retention in state court, Resp't's Decl. ¶ 7 (Dkt. No. 13); its proceedings are still pending as well. *Id.* ¶ 8; Am. Pet. 6 (Dkt. No. 24); Pet'r's Nov. 26 Letter at 8.

**D. The Instant Habeas Petition**

On August 23, 2010, Pollack, proceeding *pro se,* filed a document styled as a petition for a writ of habeas corpus, asserting that (1) the various state court interlocutory orders denying his motions to proceed *pro se* violated his constitutional rights; and (2) the three ongoing retention proceedings and commitment orders under which he is being held are unconstitutional. Pet. at 10(b), 11 (Dkt. No. 2).

On October 19, 2010, Respondents moved to dismiss the petition, arguing that the Petition is premature and unexhausted because the three retention proceedings remain pending in state court.[FN2] Memorandum of Law in Support of Respondents' Motion to Dismiss the Petition for a Writ of Habeas Corpus, dated October 19, 2010 ("Resp't's Mem.") at 2–5 (Dkt. No. 12).

> FN2. Though Pollack names a number of respondents in the Petition and Amended Petition, the only proper respondent in this proceeding is the individual holding Petitioner in custody, Peggi Healy, the Executive Director of Mid–Hudson. *See, e.g., Page v. Walsh,* —— F.Supp. ——, No. 10 Civ. 5264(DAB)(KNF), 2011 WL 134975, at \*1 (S.D.N.Y. Jan. 7, 2011) (instructing Clerk of Court to amend petition to reflect proper respondent and stating that "the proper respondent to a habeas petition is the person who has custody over the petitioner.") (quoting *Rumsfeld v. Padilla,* 542 U.S. 426, 434 (2004)).

On October 14, 2010, Pollack filed an amended petition for a writ of habeas corpus.[FN3] (Dkt. No. 24). In the Amended Petition, Pollack reiterates, in slightly different form, the same arguments he made in Ms original petition: (1) he is being unconstitutionally detained pursuant to CPL § 330.20(14); (2) his continued detention under CPL § 330.20(8)-(9) is unconstitutional; and (3) the state court's denial of his various motions to proceed *pro se* in the ongoing commitment proceedings violate his Sixth, Fourteenth, and Fifth Amendment rights. Am. Pet. at 1–2 (Dkt. No 24).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN3. By letters dated November 18, 2010, and December 20, 2010, Pollack informed the Court that while he did not intend to file an Amended Petition but instead a second independent habeas petition, he now requests that the Court consolidate the Petition and the Amended Petition. Pollack's request should be granted, and the Amended Petition should be deemed to include the Petition. *See Boyd v. Smith,* No. 03 Civ. 5401(JSR)(AJP), 2004 WL 2915243, at *5 n. 5 (S.D.N.Y. Dec. 17, 2004) (deeming habeas petition to include claim raised by petitioner in letter to court); *cf. Curry v. Cuomo,* No. 10 Civ. 0257(JS)(ETB), 2010 WL 889840, at *1 (E.D.N.Y. Mar. 6, 2010) (consolidating two separately filed and pending habeas petitions from the same petitioner). Accordingly, the Court will consider all of the materials in both the Petition and the Amended Petition, and refer to Petitioner's claims as the Amended Petition.

**\*4** By letter dated November 22, 2010, Respondents informed the Court that the arguments in their motion to dismiss the original petition are equally applicable to the amended petition. Respondents' Letter to the Honorable James L. Cott, dated November 22, 2010.

## II. DISCUSSION

### A. Legal Standard

To obtain habeas corpus relief under AEDPA, a petitioner must show that a state court's decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1)-(2). AEDPA's standard of review governs challenges by CPL § 330 .20 acquittees to their continued confinement. *See, e.g., Richard S.,* 589 F.3d at 80. However, as a threshold matter, a court

may not apply this standard unless a petitioner's claims are first fully exhausted in the state courts.

### B. Exhaustion

AEDPA "provides that a state prisoner may seek habeas corpus relief in federal court 'on the ground that he is in custody in violation of the Constitution of the United States.' " *Carvajal v. Artus,* ––– F.3d ––––, No. 09–0826–pr, 2011 WL 206181, at *6 (2d Cir. Jan. 25, 2011) (quoting 28 U.S.C. § 2254). However, AEDPA requires state prisoners seeking federal habeas relief to first exhaust available state court remedies. *See* § 2254(b)(1)(A); *Carvajal,* 2011 WL 206181, at *6.

"Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Carvajal,* 2011 WL 206181, at *6 (quoting *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (*per curiam*) (internal alterations and quotations omitted)). A petitioner must "alert the state court to the constitutional nature of a claim." *St. Helen v. Senkowski,* 374 F.3d 181, 182 (2d Cir.2004). However, a petitioner need not "cite 'chapter and verse of the Constitution' in order to satisfy this requirement." *Cavajal,* 2011 WL 206181, at *6 (quoting *Daye v. Attorney Gen. of N.Y.,* 696 F.2d 186, 192 (2d Cir.1982) (en banc)).

Therefore, to exhaust a claim, a prisoner must " 'fairly present' the federal claim 'in each appropriate state court.' " *Richardson v. Superintendent of Mid–Orange Corr. Facility,* 621 F.3d 196, 201 (2d Cir.2010) (citing *Baldwin v. Reese,* 541 U.S. 27, 29 (2004)). "State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court ... and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen. of State of N.Y.,* 280 F.3d 87, 94 (2d Cir.2001). The exhaustion doctrine applies "with equal force to insanity acquittees

Not Reported in F.Supp.2d, 2011 WL 710605 (S.D.N.Y.)
**(Cite as: 2011 WL 710605 (S.D.N.Y.))**

held pursuant to CPL § 330.20." *Francis v. Stone,* 995 F. Supp 368, 377 (S.D.N.Y 1998), *aff'd* 221 F.3d 100, 117 (2d Cir.2000).

**1. Pollack's N.Y. Criminal Procedure Law § 330.20 Claims**

**\*5** Pollack first challenges the constitutionality of the ongoing retention proceedings and the commitment orders under which he is being held. Pet. at 10(b), 11 (Dkt. No. 2); Am. Pet. at 1 (Dkt. No. 24). Respondents argue that all of Pollack's claims arising out of the proceedings are unexhausted as Pollack still has state court remedies available to him: the three retention proceedings are pending, and Pollack can request permission to appeal if the proceedings resolve unfavorably to him. Resp't's Mem. at 2–6 (Dkt. No. 12). I agree.

It is undisputed that Petitioner's three underlying retention proceedings—the source of all of Pollack's claims—remain pending in the trial court, and Pollack acknowledges that his state retention proceedings are pending. Resp't's Decl. ¶ 8 (Dkt. No. 13); Am. Pet. at 6 (Dkt. No. 24) ("I assure this Honorable Court that there are pending motions to dismiss the state court CPL 330.20 proceedings"); Pet'r's Nov. 26 Letter at 8 ("The only matters pending in the state court are purported CPL 330.20(8), (9), (9) and I believe (14), unconstitutional CPL 330.20 proceedings ..."). Because the state proceedings are pending before the trial court, Pollack's claims have not been "presented to the highest state court," *Richardson,* 621 F.3d at 201, and Pollack therefore has not exhausted his available state remedies. *See, e.g., Martens v. Katz,* No. 87 Civ. 0990(CPS), 1987 WL 18773, at \*2 (E.D.N.Y. Oct. 14, 1987) (dismissing § 330.20 acquittee's habeas petition for failure to exhaust state court remedies where her state retention applications remained pending); *see also Williams v. Horn,* No. 06 Civ. 3068(BMC), 2006 WL 2333874, at \*1 (E.D.N.Y. Aug. 9, 2006) (no habeas relief where state remedies unexhausted because of pending state proceedings), *Pettus v. McGinnis,* No. 04 Civ. 2619(LAK)(AJP), 2005 WL 1163008, at \*2

(S.D.N.Y. May 18, 2005) (same); *Albanese v. Loughren,* No. 905 Civ. 0572(NAM)(GHL), 2005 WL 1460405, at \*2 (N.D.N.Y. June 20, 2005) (same).

**2. Pollack's Claims Regarding His Right to Proceed *Pro Se***

Although Pollack concedes that the three retention proceedings are currently pending, he argues that he has exhausted his state court remedies on the issue of whether he can proceed *pro se* in the proceedings. Petitioner's Opposition to the Respondents' Motion to Dismiss, dated November 16, 2010 ("Pet'r's Opp'n") at 3. He has exhausted his state court remedies, Pollack contends, because he has moved to proceed *pro se* in all three retention proceedings, appealed the denials of his first two motions to the Appellate Division, plans to appeal the denial of his most recent motion to proceed *pro se,* and appealed as far as the New York Court of Appeals to address the issue of whether he could represent himself. Pet'r's Opp'n at 3.

Respondents argue, in response, that Pollack's "interlocutory appeals to the Appellate Division were ineffective, because the appeals were not properly brought, and because petitioner still has state-court remedies available to him, in the event the retention applications are decided unfavorably to him." Resp't's Mem. at 6 (Dkt. No. 12). I agree.

**\*6** The orders denying Pollack's motions to proceed *pro se* in the retention proceedings are, as the Appellate Division noted, interlocutory in nature. *Marvin P.,* 858 N.Y.S.2d at 904, 52 A.D .3d at 722. Accordingly, they may be reviewed but only after the state court has entered a final judgment in the underlying retention proceedings. *See, e.g., McGraw v. Wack,* 220 A.D.2d 291, 292, 632 N.Y.S.2d 135, 136 (1st Dept.1995) ("[A]fter the entry of judgment, earlier non-final orders may be reviewed only on appeal from the final judgment and, then, only if they necessarily affect that judgment."); *see also* C.P.L.R. § 5602(a) (McKinney 2010) (except where the Appellate Division has granted a party permission to appeal

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 710605 (S.D.N.Y.)
**(Cite as: 2011 WL 710605 (S.D.N.Y.))**

a decision regarding an interlocutory order to the Court of Appeals, the Court of Appeals may review only those orders of the Appellate Division "which finally determine[ ] the action"). Since the interlocutory orders may still be reviewed, Pollack has not yet exhausted all available state court remedies regarding those claims and may only begin the process of exhausting his claims relating to his right to proceed *pro se* after final judgment has been entered in at least one of the proceedings.

**C. Disposition of Unexhausted Claims**

Mixed petitions, that is, habeas petitions containing both exhausted and unexhausted claims, are eligible for "stay-and-abeyance" procedures, where "a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court." *Rhines v. Weber,* 544 U.S. 269, 275–76 (2005). However, a petition containing only unexhausted claims should be dismissed. *See Coleman v. Thompson,* 501 U.S. 722, 731 (1991) ("[The Supreme Court] has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."). Such a dismissal would not, however, bar a petitioner from bringing a future habeas petition for being second or successive. *See Slack v. McDaniel,* 529 U.S. 473, 487 (2000) (" 'None of our cases ... have ever suggested that a prisoner whose habeas petition was dismissed for failure to exhaust state remedies, and who then did exhaust those remedies and returned to federal court, was by such action filing a successive petition.' ") (quoting *Stewart v. Martinez–Villareal,* 523 U.S. 637, 644 (1998)).

Because none of the claims in the Amended Petition have been exhausted, it cannot be characterized as mixed and is therefore ineligible for a stay-and-abeyance procedure. *Rhines,* 544 U.S. at 276. Instead, the Amended Petition should be dis-

missed without prejudice. *See Brooks v. Conway,* ——F.Supp.2d ——, No. 10 Civ. 3872(RJH)(AJP), 2010 WL 2381048, at *1 (S.D.N.Y. June 14, 2010) (dismissing habeas petition without prejudice for failure to exhaust state remedies); *Doe v. Terrell,* No. 09 Civ. 5834(JCF), 2010 WL 743180, at *5 (S.D.N.Y. Feb. 25, 2010) (same); *McGinnis,* 2005 WL 1163008, at *2 (same); *Escalera v. Taylor,* No. 06 Civ. 13635(LTS)(THK), 2010 WL 307868, at *1 (S.D.N.Y. Jan. 25, 2010) (adopting Report and Recommendation and dismissing habeas petition without prejudice for failure to exhaust state remedies).

**III. CONCLUSION**

**\*7** For the foregoing reasons, I recommend that Pollack's Amended Petition (Dkt. No. 24) be dismissed without prejudice. Further, 1 recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A). Where, as here, the denial of a petition is based on procedural grounds, a certificate of appealability "must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation." *Richardson v. Greene,* 497 F.3d 212, 217 (2d Cir.2007) (citing *Slack,* 529 U.S. at 478). Such a showing cannot be made here.

***PROCEDURES FOR FILING OBJECTIONS***

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Koeltl. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJEC-**

Not Reported in F.Supp.2d, 2011 WL 710605 (S.D.N.Y.)
**(Cite as: 2011 WL 710605 (S.D.N.Y.))**

**TIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn,* 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010) (citing *Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) and *Mario v. P & C Food Mkts., Inc.,* 313 F.3d 758, 766 (2d Cir.2002)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72. If Petitioner does not have access to cases cited herein that are reported on Lex-isNexis or Westlaw, he should request copies from Respondents' counsel. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir.2009).

S.D.N.Y.,2011.
Pollack v. Paterson
Not Reported in F.Supp.2d, 2011 WL 710605 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Raymond ROBLES, Plaintiff,
v.
K. BLEAU, Correctional Officer, Riverview C.F.;
Peacock, Correctional Sergeant, Riverview C.F.; R.
Varkiar, Senior Counsel, Riverview C.F.; and New
York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.
Oct. 22, 2008.

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the
State of New York, David L. Cochran, Esq., of
Counsel, New York, NY, for Defendants.

### DECISION & ORDER

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* civil rights action, brought pursuant to 42 U.S.C. § 1983, was referred to the Hon.
George H. Lowe, United States Magistrate Judge, for
a Report-Recommendation pursuant to 28 U.S.C. §
636(b) and Local Rule 72.3(c).

The Report-Recommendation dated September
12, 2008 recommended that Defendants motion to
dismiss be granted in part and denied in part. Specifically, Judge Lowe recommended that Plaintiff's
Fourteenth Amendment procedural due process claim
against Defendant Varkiar regarding his disciplinary
hearing be dismissed if, within thirty (30) days from
the filing of this Final Order, Plaintiff does not file an
Amended Complaint that successfully states a Four-

teenth Amendment procedural due process claim. It
was recommended that Plaintiff's remaining claims be
dismissed with prejudice.

Plaintiff filed objections to the Report-Recommendation, essentially raising the same
arguments presented to the Magistrate Judge.

When objections to a magistrate judge's Report-Recommendation are lodged, the Court makes a
*"de novo* determination of those portions of the report
or specified proposed findings or recommendations to
which objection is made." *See* 28 U.S.C. § 636(b)(1).
After such a review, the Court may "accept, reject, or
modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge
may also receive further evidence or recommit the
matter to the magistrate judge with instructions." *Id.*

Having reviewed the record *de novo* and having
considered the issues raised in the Plaintiff's objections, this Court has determined to accept and adopt
the recommendation of Magistrate Judge Lowe for the
reasons stated in the Report-Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss
be **GRANTED** in part and **DENIED** in part.

### IT IS SO ORDERED.

### *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me by the Honorable Thomas J. McAvoy,
Senior United States District Judge, for Report and
Recommendation with regard to any dispositive mo-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

tions filed, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, in his Complaint, Raymond Robles ("Plaintiff") alleges that three employees of the New York State Department of Correctional Services ("DOCS"), as well as DOCS itself, violated his rights under the Eighth and Fourteenth Amendments when they (1) required him to submit to a random urinalysis test when they knew he was taking a medication that would prevent him from providing a urine sample, and (2) charged, convicted, and punished him with eighty-seven days in a Special Housing Unit for refusing to provide a urine sample. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint

**\*2** As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[FN1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint.

Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.;[FN2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing;[FN3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes;[FN4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom at approximately 7:10 a.m. that morning, he would need more water in order to urinate;[FN5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff;[FN6]

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample;[FN7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937;[FN8]

8. At approximately 10:30 a.m., Plaintiff was still

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

unable to provide a urine sample; [FN9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample; [FN10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back"; [FN11]

**\*3** 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.; [FN12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U."); [FN13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample; [FN14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [FN15]

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [FN16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine

sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [FN17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [FN18]

18. Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [FN19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [FN20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U ., with a corresponding loss of privileges; [FN21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's own hearing testimony (which Defendant Varkiar stated was not credible); [FN22]

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007; FN23 and

**\*4** 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there.FN24

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief.FN25

**B. Summary of Grounds in Support of Defendants' Motion**

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

**II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM**

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); FN26 or (2) a challenge to the legal cognizability of the claim.FN27

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2)

[emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." FN28 The main purpose of this rule is to "facilitate a proper decision on the merits." FN29 A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." FN30

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.FN31 However, it is well established that even this liberal notice pleading standard "has its limits." FN32 As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.FN33

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007).FN34 Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

**\*5** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2) requires that

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ).[FN35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[FN36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gib-*

*son,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[FN37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [FN38] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.* "[FN39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality .[FN40]

**\*6** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[FN41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [FN42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [FN43] Of course, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [FN44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

has already been given a chance to amend his plead-ing.[FN45]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[FN46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[FN47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[FN48] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended."[FN49]

## III. ANALYSIS

## A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plain-tiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been suc-cessfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket";[FN50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any *"person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws .... "[FN51]; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dis-missed with prejudice.[FN52]

*7 For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities.[FN53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

## B. Whether the Allegations of Plaintiff's Com-plaint Are Too Lacking in Detail to Give Defend-ants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plain-tiff's Complaint-when considered alone-is too lacking in detail to give Defendants the fair notice that is re-quired under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as ex-plained above in Part II of this Re-port-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposi-tion to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[FN54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). *See, supra,* Part I.A. of this Report-Recommendation.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted.[FN55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal) [FN56] that simply cannot be overlooked.

**C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine Sample Given Their Knowledge of His Medications and/or Medical Condition**

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control." (Dkt. No. 17, at 5 [Plf.'s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

**\*8** The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference.* Deliberate indifference is a state of mind akin to *criminal recklessness,* which involves *knowing* of and disregarding an excessive risk to inmate health or safety.[FN57] Here, Plaintiff himself alleges that the three individual Defendants

did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation.[FN58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence.* Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence." [FN59] Finally, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it.[FN60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

**D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report**

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ).[FN61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more,

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

such as retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question, such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it.[FN62]

**\*9** For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

**E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction**

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population.[FN63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report: (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully). *See, supra,* Part I.A. of this Report-Recommendation.

**\*10** Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C .F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate.[FN64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the person at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's

final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ...." 42 U.S.C. § 1983 [emphasis added]. The term "the Constitution and laws" refers to the United States Constitution and *federal* laws.[FN65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983.[FN66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [FN67] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive.[FN68]

**\*11** Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way "issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint"-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at \*6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be **GRANTED in part** and **DENIED in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be **DISMISSED** if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be **DISMISSED** with prejudice, and without condition.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.**[FN69]

**BE ALSO ADVISED that the failure to file**

**timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

FN30. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

FN1. *See, infra,* note 41 of this Report-Recommendation (citing cases).

FN2. (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

FN3. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

FN4. (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

FN5. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

FN6. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

FN7. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid ., attaching page from DOCS Directive 4937].)

FN8. (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

FN9. (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf .'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

FN10. (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

FN11. (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

FN12. (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

FN13. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt.

No. 17, at 5 [Plf.'s Response Affid.].)

FN14. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid ., attaching Inmate Misbehavior Report].)

FN15. (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

FN16. (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

FN17. (*Id.*)

FN18. (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

FN19. (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

FN20. (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid ., attaching page of information about Flomax].)

FN21. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

FN22. (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

FN23. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

FN24. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

FN25. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

FN26. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement

that the pleader is entitled to relief.' ").

FN27. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

FN28. *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U .S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

FN29. *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

FN31. *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

FN32. 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

FN33. *See, e.g., Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

FN34. The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
(Cite as: 2008 WL 4693153 (N.D.N.Y.))

minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

FN35. *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.* ") [emphasis in original].

FN36. *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently pre-

sented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

FN37. For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

FN38. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

FN39. *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

FN40. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation

marks and citation omitted]; *McEachin v. McGinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

FN41. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714879, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

FN42. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

FN43. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

FN44. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

FN45. *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting re-

port-recommendation of Lowe, M.J.).

FN46. *See Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

FN47. *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

FN48. *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

FN49. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007)

(Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

FN50. *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see also* Fed.R.Civ.P. 12(h)(3).

FN51. 42 U.S.C. § 1983 [emphasis added].

FN52. *See, supra,* note 44 of this Report-Recommendation.

FN53. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007) (Sharpe, J.) [citing cases].

FN54. *See, infra,* note 41 of this Report-Recommendation (citing cases).

FN55. The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

FN56. As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2),

but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-Recommendation.

FN57. *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

FN58. In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication,* not because of his prostate *condition.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate *condition,* not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

FN59. *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

FN60. *See, supra,* note 44 of this Report-Recommendation.

FN61. *Accord,* *Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3285917 (N.D.N.Y. May 19, 2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead,* 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783367 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord,* 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord,* 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

FN62. *See, supra,* note 44 of this Report-Recommendation.

FN63. *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in rela-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

tion to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

FN64. *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12, 1995 WL 760651 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison

disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

FN65. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States."* ) (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983 ... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*States."* ) [emphasis added].

FN66. *See Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 ....") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.' ") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

FN67. *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

FN68. *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

FN69. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; *see also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

N.D.N.Y.,2008.
Robles v. Bleau
Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 724680 (S.D.N.Y.)
**(Cite as: 2011 WL 724680 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.
Jelani Rondell RODGERS, Plaintiff,
v.
Arresting Officer CARTAGENA, Arresting Officer Montalvo, John Doe (Transport Driver) and Unknown Officers, Defendants.

No. 10 Civ. 9285(NRB).
Feb. 25, 2011.

### MEMORANDUM and ORDER

NAOMI REICE BUCHWALD, District Judge.

**\*1** Plaintiff, an incarcerated prisoner, brings this action *pro se* pursuant to 42 U.S.C. § 1983 for damages arising out of his arrest on October 29, 2010, the subsequent search of his truck and home and the seizure of some of his property and damage to his truck. It is apparent from the complaint that plaintiff is incarcerated on charges arising out of the events recited in the complaint. It is equally apparent that the issues related to the circumstances of the arrest and search and seizure of the property are inexorably intertwined with the ongoing prosecution of plaintiff and that the outcome of that proceeding may have an impact on the viability of the claims advanced here. Since plaintiff does not seek to stay the criminal prosecution the abstention doctrine of *Younger v. Harris,* 401 U.S. 37 (1971), does not require dismissal. Nonetheless, it is clear that proceeding with this case at this time would interfere with the pending criminal case. In this regard the Second Circuit has taught:

"…. we have held that abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declararory and injunctive relief, but that a stay of the action pending resolution of the state proceeding may be appropriate. *See Giulini v. Blessing,* 654 F.2d 189, 192–94 (2d Cir.1981). The Supreme Court has declined to reach the issue whether *Younger* applies to claims for money damages, but has noted that even if it does, the federal suit should be stayed, rather than dismissed, if the money damages sought could not be obtained in the pending state proceeding, even if the money damages sought could be obtained in a separate state proceeding. *See Deakins v. Monaghan,* 484 U.S. 193, 201–03, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988), …"

*Kirschner v. Klemons,* 225 F.3d 227, 238 (2d Cir.2000).

Accordingly, this case is stayed until the pending criminal charges arising out of the arrest precipitating this case is resolved. Plaintiff is directed to inform this Court no later than May 25, 2011 of the status of his criminal case and earlier if it is resolved by dismissal, plea or trial. Failure to keep the Court apprised of the status of the case will result in a dismissal without prejudice of the complaint. In this regard, we inform the plaintiff that there is a three year statute of limitations for his Section 1983 claim so that there would be ample time to refile the case even if it was dismissed without prejudice.

**SO ORDERED.**

S.D.N.Y.,2011.
Rodgers v. Cartagena

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 724680 (S.D.N.Y.)
**(Cite as: 2011 WL 724680 (S.D.N.Y.))**

Not Reported in F.Supp.2d, 2011 WL 724680 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.